JOHN J. JENKINS AND OTHERS, APPELLANTS V. SARAH M. PYE AND EDWARD ARELL PYE, INFANTS, BY JAMES B. PYE, THEIR FATHER AND NEXT FRIEND, APPELLEES.

The complainants in their bill allege, that a conveyance of her real estate was made by a daughter to her father, for a nominal consideration. The answer denied the matter stated in the bill; and the defendants gave evidence of the transfer of stock, to the value of two thousand dollars, on the day the conveyance was made, claiming that this was also the consideration in the deed. *Held*, that this evidence was admissible, without an amendment of the answer. It rebutted the allegation in the bill, that the deed was made wholly without consideration.

The complainants, as the ground to invalidate a deed, made by a daughter, of twenty-three years of age, to her father, by which she conveyed the estate of her deceased mother, to her father; he having a life estate, as tenant by the curtesy, in the same; asserted that such a deed ought, upon considerations of public policy, growing out of the relations of the parties, be deemed void. The Court said: We do not deem it necessary to travel over all the English authorities which have been cited; we have looked into the leading cases, and cannot discover any thing to warrant the broad and unqualified doctrine asserted. All the cases are accompanied with some ingredient, showing undue influence exercised by the parent, operating on the fears or hopes of the child; and sufficient to show reasonable grounds to presume, that the act was not perfectly free and voluntary, on the part of the child; and in some cases, although there may be circumstances tending, in some small degree, to show undue influence; yet if the agreement appears reasonable, it has been considered enough to outweigh slight circumstances, so as not to affect the validity of the deed. It becomes less necessary for the Court to go into a critical examination of the English chancery doctrine on this subject; for, should the cases be found to countenance it, we should not be disposed to adopt or sanction the broad principle, that the deed of a child to a parent, is to be deemed, prima facie, void.

To consider a parent disqualified to take a voluntary deed from his child, without consideration, on account of their relationship, is opening a principle at war with all filial, as well as parental duty and affection; and acting on the presumption that a parent, instead of wishing to promote the interest and welfare, would be seeking to overreach and defraud his child. Whereas, the presumption ought to be, in the absence of all proof tending to a contrary conclusion, that the advancement of the interest of the child was the object in view; and to presume the existence of circumstances conducing to that result. Such a presumption harmonizes with the moral obligations of a parent to provide for his child; and is founded upon the same benign principle that governs cases of purchases made by parents, in the name of a child. The natural and reasonable presumption in all transactions of this kind is, that a benefit was intended the child, because in the discharge of a moral and parental duty.

In the year 1813, a daughter, twenty-three years old, conveyed all her remainder in the real estate which had belonged to her mother, to her father, for a nominal consideration. She married two years afterwards, and died in 1818. No complaint of the transaction was made in the lifetime of the daughter, nor during the life-

time of the father, who died in 1831. Lapse of time, and the death of the parties to a deed, have always been considered, in a court of chancery, entitled to great weight; and almost controlling circumstances in cases of this kind.

ON appeal from the circuit court of the United States of the District of Columbia, for the county of Alexandria.

In the circuit court, the appellees filed their bill against John J. Jenkins, and Mary, the wife of Robert Morrow, children of George Jenkins by a second wife; the said George Jenkins having died on the 8th day of April, 1831; to set aside a certain deed executed by Eleanor Jenkins, who was the daughter of George Jenkins and the mother of the complainants, and who died in 1818. George Jenkins had first intermarried with Mary Arell, who, as one of the heirs of Richard Arell, was entitled to considerable real estate; of which partition was made in 1797. She died, leaving but one child, the mother of the complainants; and her estate descended to her daughter, subject to a life estate in George Jenkins, as tenant by the curtesy. George Jenkins, after her decease, married and had children by his second wife, one of whom is one of the appellants in the case. The deed was duly executed by the mother of the complainants, on the 15th of March, 1813, and recorded on the 3d of November, in the same year; and conveyed in fee simple to George Jenkins, for a nominal consideration, all the real estate and ground rents to which she was entitled as the heir of her mother. The bill also sought to recover the value of certain real estate, part of that conveyed to George Jenkins, which was afterwards sold by him to different persons; and also the rents of part of the real estate left unsold at the death of George Jenkins, and received by the executor, after his decease. The complainants charge in their bill, that the deed executed by their mother, being made wholly without consideration, operated to create a resulting trust in favour of Eleanor Jenkins and her heirs: and they claim, if this cannot be sustained, that the deed was obtained by the undue influence of paternal authority; and was therefore void against the grantor and her heirs, in equity: and ask that it be vacated as to all the property conveyed by it, which was unsold at the decease of George Jenkins.

The answer of the defendants denies that any undue influence was exercised by George Jenkins over his daughter; who, when she executed the deed, was twenty-three years of age, and was at the time

[Jenkins et al. v. Pye et al.]

well acquainted with her rights, and with the value of the property. On the trial it was admitted, that no undue influence was exercised by the father; and it was in evidence, that when the deed was recorded, George Jenkins gave to his daughter two thousand dollars in bank stock. This, and the further consideration that the daughter was to receive a proportionate part of her father's estate, who, in addition to the property conveyed by the deed, was wealthy; and the estate conveyed being such as required large expenses for its preservation and improvement; were asserted to be a valuable consideration for the deed.

The circuit court decreed the deed to be null and void; because the same was made without "any consideration," and because the same was obtained "soon after the minority of said Eleanor, and while she yet remained under his power and control, and uninformed of the nature and extent of her rights;" and having decreed also, that one of the appellants, John J. Jenkins, as administrator aforesaid, should pay three thousand six hundred and seventy-seven dollars and one cent, being a balance due, after deducting two thousand dollars, paid on the 3d of November, 1813, with interest from 8th of April, 1831, on account of money received for sales of part of said property; and also, the sum of one thousand one hundred and sixty-seven dollars and five cents, amount of rents alleged to have been received since the death of the said George Jenkins; and also, the sum of eighteen dollars and twenty-five cents, with interest from said 8th of April, 1831, which had been received by George Jenkins on the partition of the estate, for owelty of partition, awarded in 1797.

The defendants appealed to this Court. The case was argued by Mr. Robert I. Brent and Mr. Jones for the appellants, and by Mr. Simmes, and Coxe for the appellees.

Mr. Brent contended,

1st. That there can be no resulting trust as charged in the bill; because that doctrine is confined to cases where the trust results to a purchaser taking a conveyance in the name of a third person, or similar cases; 2 Atkyn's Rep. 256; 2 Mad. Chan. Prac. 113; 4 Kent's Com. (ed. 1832,) 305.

2d. The bill takes the alternative ground, in case the resulting trust fails; that the deed of March, 1813, executed by Eleanor Jenkins (the daughter) to George Jenkins, (the father,) was obtained by the undue influence of paternal authority.

[Jenkins et al. v. Pye et al.]

The answer of the defendants positively denies the charge of undue influence; and this denial is conclusive to negative the charge in the absence of all other testimony.

The case of the complainants stands alone on the broad and naked principle that all transactions or dealings between parent and child by which a benefit passes to the former is interdicted, " ipso facto;" by the policy of the law. We deny that such is the settled rule of law, and confidently assert, that in every adjudged case there was some circumstance of undue influence proved, and required by the court as a material ingredient. Huguenir v. Basely, 14 Vesey, 291; 2 Atkyns, 254, 258; 1 Peere Williams, 607; 1 Peere Williams, 639; 1 Atkyns, 402; 2 Atkyns, 85; 2 Atkyns, 160; 1 Mad. Chan. Prac. 309; Green v. Green, 1 Bros. Parl. Cas. 143; Lewis v. Pead, 1 Ves. Jr., 19; Pratt v. Barker, 1 Simon's Rep. 1; King v. Hamlett; 2 Mylne and Keene, 474, 480; Pothier, Oblig. (old edit.) 22.

3d. Admitting that this deed was purely voluntary, an absolute gift of all the property by a daughter twenty-three years of age to her father; still the conveyance ought to be sustained, because it may have been the true interest of Eleanor Jenkins to place herself on the same footing with her brother and sister by a different mother: her father was a man of large fortune, and it might be greatly to her benefit to divest herself of her remote reversion, and come in, share and share alike, with her brother and sister.

At all events, such a settlement would be reasonable and just towards her half-brother and sister; and on that ground alone would be valid; 1 Atkyns, 5, 6.

4th. Whatever may have been the abuse of parental authority by George Jenkins in procuring the deed of March, 1813; the equity of the complainants is lost by the lapse of time, (nineteen years,) and the circumstances of the case.

On this point it appears that Eleanor Jenkins was not married for two years after the date of the deed; and that she lived several years after her intermarriage with James Pye (the next friend of the infant complainants); that George Jenkins lived until 1831; and that not a word of complaint against the fairness of the deed of March, 1813, was ever uttered in the lifetime of either of the original parties to that deed. The Court would make wild work to unravel the transaction under such circumstances. Bower v. Carter, 5 Vesey, 875, 879; 17 Vesey, 97, 100; 1 Jac. & Walk. 63.

5th. But conceding all previous propositions, it appears that two

[Jenkins et al. v. Pye et al.]

thousand dollars was paid by George Jenkins to Eleanor Jenkins on the 3d November, 1813, the day of recording the deed; this was a full and adequate consideration for the reversion dependant on a robust life, and considering the dilapidated situation of the property.   And it farther appears, that George Jenkins applied one thousand dollars to the education of Sarah M. Pye (one of the complainants); these facts prove the consideration paid, and to be paid, for the purchase of Eleanor Jenkins' reversionary interest.

6th. On the hypothesis that the deed of March, 1813 is to be annulled, then the court below erred in not allowing the appellants interest on the sum of two thousand dollars paid to Eleanor Jenkins, on the 3d of November, 1813; and in not crediting George Jenkins' estate with the advances made by him to the children of Eleanor Jenkins; and which could not be considered in the light of donations, if this deed is pronounced invalid.   Slocum v. Marshal, 2 Wash. C. C. R. 401.

7th. The court erred in charging George Jenkins' estate with a sum of money paid him in 1797, in right of his wife, (the mother of Eleanor Jenkins) for owelty of partition; because, first, the bill did not claim it, 9 Cranch, 19; second, the husband was entitled to the money as personalty not realty, 1 Har. & Gill, 277.

Mr. Jones stated that there was nothing in this case, upon the bill, answer and evidence, but the case of a daughter of full age, having conveyed her residuary interest in her estate to her father; he having an intermediate estate for life in the property, as a tenant by the curtesy.   At the time of the conveyance, he was in full life and health; and he actually lived eighteen years after the conveyance was made.   There is no allegation of undue parental influence.   This is disclaimed; and the high character of the father forbids such a belief.   The father appropriated two thousand dollars of stock to the benefit of the daughter, on the day the conveyance was recorded; which amount he received from the sale, in fee simple, of a part of the estate, which was at the same time sold for three thousand dollars.

If the deed is to be set aside, it will be on the principle that such a conveyance by a daughter to a father cannot be made.   That the relations of a child to a parent are such, as to forbid her the exercise of a fair and just discretion and judgment; and that a court of chan-

[Jenkins et al. v. Pye et al.]

cery will presume all such conveyances fraudulent, and will avrid them.

Mr. Jones denied that such principles were just to the relations of a parent to a child; and he denied that any such rule had been established by the decisions of courts of chancery.

No case had been cited, and none could be found, in which the mere fact of such a conveyance furnished a ground to vacate it. In all the cases there had been other matters which satisfied the chancellor that the deed should be avoided.

The presumption should be in favour of such a transaction as that before the Court. It was between a father and his child; between one who had every inducement, from nature and from duty, to take care of and protect and promote the interests of his child. Would the Court, against these bonds of union, against the influence of a relationship which should be believed to operate only for the benefit of the child, infer the violation of every duty, and believe that all these feelings were disregarded? Would they apply a rule to such a case, which could have had no origin but in a bosom devoid of every affection which should prevail in it? A court of chancery, to adopt such principles, must disregard the best and the most influential sympathies and affections of our nature; and must look at man as wanting in all that ornaments and dignifies him.

Mr. Semmes, for the appellees, after fully stating the facts, regretted that his absence from the Court during the opening argument of the counsel for the appellants on the previous day, would limit his remarks to a consideration of the causes of error assigned by the appellants in their printed brief. These assignments of error he would, however, take up *seriatim;* and felt confident that an investigation of them would disclose the whole merits of the controversy, both on the law and the facts.

The appellants contend that the decree ought to be reversed for the following reasons:

1st. That the court below erred in refusing to allow the appellants to amend their answer, upon newly discovered evidence, so as to plead the fact of a *valuable consideration* having been paid for the property conveyed in the deed, in order to let in proof of the same.

The prayer of the petition was properly refused. It was made *after the hearing*—after the court had pronounced their opinion in the case, and were about proceeding to enter a final decree. Petitions

[Jenkins et al. v. Pye et al.]

to amend the pleadings both at law and in equity are addressed to the sound discretion of the Court; when that discretion has once been exercised, it is absolute, and admits of no question. A refusal to permit such amendments can never be assigned as error in an appellate court. Were the action of the court below subject to such revision, it would cease to have a discretion in the matter. Amendments in an answer will never be permitted after the hearing. ·Cited 1 Harr. Chan. Prac. 226, et seq.; Rawlins v. Powell, 1 P. Wms. 297; Calloway v. Dobson, 1 Brockenborough, 119.

But the petition was rightly refused on the face of it. It does not allege the discovery of *new* evidence; but is in truth a prayer to amend, that a new version may be given to a fact already before the court, and on which they had judicially passed. The amendment desired was, that they might allege a transfer of two thousand dollars in bank stock, made November 3d, 1813, to be the consideration of the deed executed on March 15th, 1813. It was a petition for a new argument on the state of facts already considered by the court. The answer of Jenkins had alleged the transfer of large amounts of bank stock; the report of the master commissioner, and the certificate of the bank clerk, had ascertained that amount to have been the two thousand dollars in question; this was then before the court; was claimed as an offset in the court below by the appellants; and when, two years after the commissioner's report, the court were about proceeding to a final decree, this petition was put in for an amendment, by which a fact so well known might be wrested to a purpose that the zealous defence of the appellants below had never until that moment contemplated. This transfer of bank stock, which can never be admitted as the consideration of the deed from Eleanor to her father; will assume a more important aspect in considering the next cause of error in the appellants' brief.

The petition was, moreover, defective in a material point. While it alleged that this bank stock was the consideration of the deed, and prayed the amendment to let in proof of that fact; it did not allege the existence of evidence to substantiate the position, nor show a probable case to the court that such was likely to be proven. The petition to amend was, under all the circumstances, properly refused.

The next cause of error is:

2dly. That said deed does not operate as a resulting trust, as charged in this case.

Although it is perfectly competent for the appellees to insist that

in this case a trust did technically result to the grantor and her heirs, yet they do not consider it necessary to rely on that point. That such trust on the facts of this case would have resulted, cited 2 Story's Equity, 440.

The facts show that the original parties to the deed must have contemplated a trust. The two thousand dollars now sought to be made the consideration of the deed, was part of the larger sum of three thousand dollars; for which one of the lots, covered by it, was sold a few days before to Harper & Davis. Here was a direct application by the grantee, to the use of the grantor, of part of the pro ceeds of the property.

It was a direct recognition of the implied trust by George Jenkins; and alone would warrant the inference that such was the contemplation of the parties. But this point in the appellants' brief, as well as the next, which is:

3dly. That there was no "undue influence" used, as charged in this case; and that the evidence upon this point, so far as it goes, shows the reverse, may be properly included under the fourth; which is the only material question presented by the record. It may be as well, however, here to remark, that the appellees do not rely on any allegation of *actual* "undue influence;" they do not impugn the validity of this deed, on any charge of *actual* fraud. The grounds on which they contend for its nullity, will be presently considered. The answer of Jenkins is conclusive as to the point of restraint and coercion. Being responsive to the bill, and uncontradicted by testimony, it disposes of that question. The appellees, then, must resort to higher and sterner principles of equity jurisprudence to sustain their case.

The next, and only important point made by the appellants, is:

4thly. That said deed is valid, both in law and in equity.

No doctrine of the law is more firmly established, or more frequently acted on by courts of equity, than that all agreements, contracts, and conveyances procured by fraud, imposition, or undue influence, are null and void. As the rule is imperative where actual fraud is established; so is it equally binding when the circumstances of the case, or the relations subsisting between the parties, are such as to raise the presumption of implied fraud, or to warrant the inference that one of the contracting parties might have been subjected to oppression, or undue influence. The rule may appear arbitrary and unjust at first sight, as calculated to impair the free exercise of

[Jenkins et al. v. Pye et al.]

volition in persons competent to contract; and as having a tendency to destroy vested rights, and operate injuriously on innocent third persons. Correctly viewed, however, it will not appear obnoxious to such objections. The policy of the law must lay out and define certain general principles as guides of action, and rules for constru- ing all instruments and agreements.

Another broad department of equity jurisdiction is comprised in the protection it holds out to parties whom the law does not con- sider as altogether sui juris, in respect to the exercise of proprietary rights; or as liable to be influenced by circumstances peculiar to their age, capacity, or situation. Protecting weak and incapacitated persons from the effects of their own injudicious contracts, it well becomes the jealous spirits of the courts to have marked out certain social relations as peculiarly subject to suspicion and caution, in respect to all agreements between persons affected by considerations or motives arising out of the relationship in question. Where one party is not perfectly free to act, and the other party has availed himself of his power and influence in procuring a conveyance or contract, courts of equity dispense with proof of actual fraud or im- position; but inferring constraint from the relations of the parties, will set aside such contract or conveyance, as contrary to public policy. In all cases, the *onus probandi* is on the party setting up such contract, to show an adequate consideration, and the *bona fide* character of the transaction. The relations between *guardian and ward, parent and child, solicitor or attorney and client, trustee and cestui que trust, master and servant,* and the cases of *expect- ant heirs,* and of *reversioners,* are jealously watched; and all con- tracts made during its existence, by the minor party, in each of these relations to the superior, are scrutinized jealously; and, in some cases, on bare suspicion of undue influence; in others, on the mere relation of the parties, fraud is inferred; and the contract or conveyance set aside. Contracts made soon after the termination of such relations, are, on the same principle of policy, subjected to the operation of the same wholesome rule. Nor will lapse of time, or the death of the fraudulent purchaser, so affect the case as to preclude the grantor, and those claiming under him, from setting aside the con- tract. Authorities cited, Morse v. Royal, 12 Ves. 371; Wright v. Proud, 13 Ves. 137; Murray v. Palmer, 2 Sch. and Lef. 474; Osmond v. Fitzroy, 3 P. Wms. 131; Huguenin v. Baseley 14 Ves.

273; 2 Eden, 286; Rhodes v. Cook, 2 Sim. and Stu. 448; Davis v. Duke of Marlborough, 2 Swanst. 139; Gowland v. De Faria, 17 Ves. 30; Peacock v. Evans, 16 Ves. 512; Evans v. Lewellen, 1 Cox's Rep. 333; S. C. 2 Bro. C. C. 120; Gwynne v. Heaton, 1 Bro. C. C. 1; Bell v. Howard, 9 Mod. 302; Young v. Peachy, 2 Atk. 254; and the case of Glissen v. Ogden, therein referred to; Heron v. Heron, 2 Atk. 160; Blunden v. Barker, 1 P. Wms. 639; S. C. 10 Mod. 451; Broderick v. Broderick, 1 P. Wms. 239; Scrope v. Offley, 1 Bro. P. C. 276; Gould v. Okeden, 4 Bro. P. C. 198; Twisleton v. Griffith, 1 P. Wms. 310; Jeremy's Equity, 394, et seq.; 1 Story's Equity, 304 to 324, inclusive; and Waller v. Armistead's Administrators, 2 Leigh, 11.

The case at bar, is one peculiarly calling for the application of the principles recognised and established by the authorities cited. The case is that of a deed made without consideration, from a young daughter, not twenty-three years of age, to her wealthy father, with whom she resided; conveying all her property. Her father was tenant by the curtesy, and held the particular life estate; her estate was the reversion descended to her from her mother, and dependent thereon. She was then both under the parental influence, and presented the case of a young heir dealing for an expectancy with a party owning the particular estate, for no consideration, and with no declaration of trust; a party whose position peculiarly subjected the present contract to the implication of fraud, or the suspicion of imposition.

The ground assumed by the appellants, that this is a voluntary deed, and therefore good against the grantor, and all claiming under her, cannot, on this aspect of the case, be maintained. The general principle introduced by the statutes 13 and 27 Eliz., re-enacted in most of the states, that voluntary deeds, so far only as existing creditors and subsequent bona fide and unnoticed purchasers are concerned, are void, is admitted by law. The exception which the courts imply from the terms of the statute, and the usual motive to defraud creditors in all such conveyances, as against the grantor and his sub-claimants, seeking to recover the property, or vacate the conveyance, is the sole exception to this general rule. A party who has conveyed away his property to evade the payment of his just debts, shall not be permitted to take advantage of his own wrong, and reclaim his property, against the will of his grantee, the partner in the fraud; when the claims of creditors may have been otherwise satis-

fied, or a necessity for their interference has passed away. This principle, with that other plain rule, giving any party competent to contract, and uninfluenced by fraud, duress, or undue advantages taken by the grantee, a free disposition over his property, cannot be applied to the present case. A voluntary deed, to be good, must be made *ceteris paribus*. If the party grantor be an infant, lunatic, or subjected to the operation of those relations so jealously watched by courts of equity; in some cases from the absolute nullity of the contract; in others on the principles of public policy, that contract will be set aside. By a voluntary deed, is meant a gift without consideration: would then a voluntary deed, executed under duress, be sustained? The relation of the parties assimilates the present deed to one obtained by actual fraud, or undue influence.

The remaining causes of error were in reference to improper items in the master commissioner's account; questions as to the effect of evidence; the allowance of interest and costs; and the right to credits in the nature of offsets. Though material to the merits, the discussion of these points is not of sufficient general *importance to be set out in the argument.*

Mr. Justice THOMPSON delivered the opinion of the Court.

This case comes up on appeal from the circuit court of the District of Columbia, for the county of Alexandria. The appellees were the complainants in the court below; and as heirs at law of their mother, Eleanor Jenkins, filed their bill, by their father, James B. Pye, as next friend, to set aside a deed given by their mother to George Jenkins, her father, bearing date the 15th of March, 1813. The bill charges, that the deed was made wholly without consideration, and operated only to create a resulting trust in favour of the grantor and her heirs; and if their claim cannot be sustained on that ground, they charge that the deed was obtained by the undue influence of parental authority, and therefore void in equity, against the said Eleanor Jenkins and her heirs.

The consideration expressed in the deed is one dollar; and as to the allegation of undue influence, the bill charges that the said Eleanor inherited, as heir of her mother, the land conveyed to her father, and in which her father was entitled to a life estate. That at the time of her mother's death, she was an infant of very tender years, residing with her father, and continued to reside with him until her marriage. That she never was informed of the extent of

her property, to which she became entitled on the death of her mother; and having led a life of great seclusion, in the country, at a distance from Alexandria, where the lands are situated, she had no means of acquiring information on the subject. That very soon after the said Eleanor had attained the age of twenty-one years, and whilst she still resided with her father, and remained in ignorance of the extent and value of her rights; the said George Jenkins, availing himself of his parental authority; and of the habit of implicit obedience, and submission on the part of his child, procured from her the deed in question.

The answers of the appellants deny every material charge and specification in the bill, tending to show that any undue influence was exercised by the father, to obtain the deed from his daughter; but that the act was voluntary and free on her part. That she was well acquainted with her rights, and the value of the property. That at the time of executing the deed, she was twenty-three years of age; and that the same was not done in expectation of her marriage, as she was not married for two years afterwards.

The mere nominal consideration expressed on the face of the deed was enough to pass the estate to the grantee, no uses being declared in the deed. It is true, as a general proposition, that he who pays the consideration, means, in the absence of all rebutting circumstances to purchase for his own benefit; and there may be a resulting trust for the use of the party paying the consideration. But this is founded upon a mere implication of law, and may be rebutted by evidence, showing that such was not the intention of the parties. And in the present case, the evidence is conclusive to show that no such resulting use was intended. But it is unnecessary particularly to notice this evidence, as this part of the case was not very much pressed at the argument. And in addition to this, the evidence shows that on the 3d of November, 1813, the day her deed was offered for record in Alexandria, George Jenkins paid to his daughter two thousand dollars; which, under the situation of the property, might well be considered nearly, if not quite, an adequate consideration. The property being in a dilapidated state, requiring great expense in repairs; and the grantee, George Jenkins, having a life estate in it, which, from the circumstance of his living eighteen years after the date of the deed, there is reason to conclude, that the state of his health and constitution was such at that time, as justly to estimate his life estate of considerable value.

The evidence of the payment of two thousand dollars, in addition to the nominal consideration of one dollar mentioned in the deed, was admissible without any amendment of the answer. It rebutted the allegation in the bill, that the deed was made wholly without consideration.

But the grounds mainly relied upon to invalidate the deed, were, that being from a daughter to her father, rendered it at least, prima facie, void. And if not void on this ground, it was so because it was obtained by the undue influence of paternal authority.

The first ground of objection seeks to establish the broad principle, that a deed from a child to a parent, conveying the real estate of the child, ought, upon considerations of public policy, growing out of the relation of the parties, to be deemed void: and numerous cases in the English chancery have been referred to, which are supposed to establish this principle. We do not deem it necessary to travel over all these authorities; we have looked into the leading cases, and cannot discover any thing to warrant the broad and unqualified doctrine contended for on the part of the appellees. All the cases are accompanied with some ingredient, showing undue influence exercised by the parent, operating upon the fears or hopes of the child; and sufficient to show reasonable grounds to presume that the act was not perfectly free and voluntary on the part of the child; and in some cases, although there may be circumstances tending, in some small degree, to show undue influence; yet if the agreement appears reasonable, it has been considered enough to outweigh light circumstances, so as not to affect the validity of the deed.

It becomes the less necessary for us to go into a critical examination of the English chancery doctrine on this subject, for should the cases be found to countenance it, we should not be disposed to adopt child or sanction the broad principle contended for, that the deed of a to a parent is to be deemed, prima facie, void. It is undoubtedly the duty of courts carefully to watch and examine the circumstances attending transactions of this kind, when brought under review before them, to discover if any undue influence has been exercised in obtaining the conveyance. But to consider a parent disqualified to take a voluntary deed from his child, without consideration, on account of their relationship; is assuming a principle at war with all filial as well as parental duty and affection; and acting on the presumption, that a parent, instead of wishing to promote the interest

and welfare, would be seeking to overreach and defraud his child. Whereas, the presumption ought to be, in the absence of all proof tending to a contrary conclusion, that the advancement of the interest of the child was the object in view; and to presume the existence of circumstances conducing to that result. Such a presumption harmonizes with the moral obligations of a parent to provide for his child; and is founded upon the same benign principle that governs cases of purchases made by parents in the name of a child. The prima facie presumption is, that it was intended as an advancement to the child, and so not falling within the principle of a resulting trust. The natural and reasonable presumption in all transactions of this kind is, that a benefit was intended the child, because in the discharge of a moral and parental duty. And the interest of the child is abundantly guarded and protected, by keeping a watchful eye over the transaction, to see that no undue influence was brought to bear upon it.

In the present case, every allegation in the bill tending to show that any undue influence was used, is fully met and denied in the answer and is utterly without proof to sustain it. And indeed this allegation seemed to be abandoned on the argument.

But if any thing was wanting to resist the claim on the part of the appellees, and to establish the deed, and the interest derived under it, it will be found in the lapse of time. The deed bears date the 3d of November, 1813; the grantor, Eleanor Jenkins, then being twenty-three years of age. She was married about two years thereafter, and died in the year 1818; and not a whisper of complaint was heard against the transaction during her lifetime. George Jenkins, the grantee, lived until the year 1831, and no complaint was made in his lifetime; after a lapse of eighteen years, it is difficult, if not impracticable, fully to explain the transaction.

Lapse of time, and the death of the parties to the deed, have always been considered in a court of chancery, entitled to great weight, and almost controlling circumstances, in cases of this kind.

But the circumstances, as disclosed by the proofs, not only rebut every presumption of unfairness on the part of George Jenkins, but disclose circumstances, tending to show that he was governed by motives highly honourable and commendable. He was a man of large estate; the property conveyed to him by his daughter was in a dilapidated and unprofitable condition. He had a life estate in it. And it would have been unreasonable, if not unjust to his other children, to

[Jenkins et al. v. Pye et al.]

have required him to incur great expenses in improving this property, which would enure to the exclusive benefit of this daughter. His object, as well as that of his daughter, seems to have been to enable him the more easily and satisfactorily to make an equal distribution of his property among all his children; as well the said Eleanor, as those he had by a second marriage. This was a measure well calculated to promote harmony among his children: and his intention to carry that disposition of his property into execution, was manifested by the will he made; which failed however of its full operation, by reason of some informality in its execution. But the appellees have succeeded to a full and equal share of his estate, under the distribution which the law has made; which is all that in equity and justice they could claim.

This view of the case, renders it unnecessary to notice the points made on the argument, in relation to the accounts which the appellees were called upon to render.

The decree of the court below is accordingly reversed, and the bill dismissed.

Mr. Justice CATRON.

I concur with the majority of the Court, that the decree be reversed; but, differing most materially with the reasons and principles on which the opinion of my brethren proceeds, I will briefly state the difference, hoping sincerely I may be mistaken.

The cause must be reviewed here in the same form that the parties presented it to the circuit court: this is due to the court below, and the only mode we can pursue as a court of appeals.

The bill was filed in July, 1833: the answer in May, 1834: the replication in April, 1835: and, on the 11th of May, the cause was, by agreement, set for hearing; and on the 26th of October, 1835, was heard upon the bill and answers, with two additional facts, which the parties admitted of record; to wit: 1. That George Jenkins was, at the date of the deed from his daughter to him, in 1813, a man of large fortune, and so continued till his death. 2. That the deed conveyed all the estate to which the said Eleanor was in any manner entitled. Upon this case, the court, on the 26th of October, 1835, decreed for the complainants; and ordered an account to be taken of the rents of the property in litigation since George Jenkins' death, the parcels sold by him in his lifetime, and the value of the estate in 1813, &c.

On the 13th of May, 1837, the master commissioner eported; and on the 31st of October, 1837, the report was confirmed by a final decree of the court. Upon this proceeding, it will be remarked, that the decree of October, 1835, could not be reversed by that of 1837, on evidence furnished to the commissioner in taking the account, and which he reported to the court. The first decree could only have been reached by a petition for a rehearing, (if filed in time) or by a bill of review; and we must, therefore, examine the decree of 1835, on the facts then presented to the circuit court.

The bill alleges the conveyance of 1813 to have been executed without any valuable consideration; and that the daughter acted under the influence of parental authority. That it was executed without valuable consideration, the answers admit; but they deny that any constraint or parental authority was exercised, and respond that the deed was made freely and voluntarily. They also admit, that Eleanor Jenkins was born the 17th September, 1790; that her mother died in 1796; that when the deed was made, Eleanor was only eighteen months over twenty-one years of age, and that she was the sole heir of her mother; the father and grantee being tenant by the curtesy of the lands descended. That George Jenkins had two other children by a different mother, who are the defendants; and that he died in 1831, intestate as regarded his real estate.

Eleanor Jenkins married in 1815, and died in 1818; leaving the complainants her heirs.

It is also averred in the answers, that the property in 1813 was in a dilapidated condition; and that it had suffered by fire, which was a principal reason for making the conveyance. The averment is independent of any statement in the bill, is traversed by the replication; and no proof having been made to sustain the averment, of course it cannot be noticed here. The defendants also insist, that the bill should be dismissed because of the lapse of time, and the death of parties and witnesses.

This being the case presented to the circuit court in 1835, the question is, did that court err in ordering the defendants to account? *Time* and the *death* of George Jenkins aside, I think it impossible so to hold; consistently with the best established doctrines governing a court of chancery.

The elements of the decree below were, 1. That the grantor, Eleanor Jenkins, *was a young heir*, and a woman, when she made

the conveyance; that it was of her whole estate, without considera-, tion, and to a parent of large wealth.

2. That she was an heir of an estate in reversion, which descended to her in tender infancy; and in regard to the possession and enjoyment of which she must be deemed and treated, in a court of chancery, *as an expectant heir.*

3. She conveyed to the adult tenant for life, who was her *father* and natural *guardian*, with whom she resided, and on whom she was dependent.

I propose to examine the cause, such as it is found; not to speculate upon supposed cases of remainders acquired by purchase, and sold by him who thus acquired; nor upon cases where the tenant for life joins in the sale. These and other transfers of *remainders*, may depend on very different principles from the case before the Court.

The two first grounds, governing the decision of the circuit court, will be treated together; disregarding for the present the relation of father and daughter.

In the language of Sir William Grant, in Gowland v. De Faria, 17 Vesey, 23, it will be laid down, that " this is the case of a person who, in this court, is considered as an expectant heir;" and " that it is incumbent upon those who have dealt with an expectant heir, relative to his reversionary interest, to make good the bargain: that is, to be able to show that a full and adequate consideration was paid. In all such cases, the issue is upon the adequacy of price; no proof of fraud is necessary; and the relief is given upon general principles of mischief to the public, without requiring particular evidence of actual imposition." 2 Atk. 28; Jeremy's Eq. 398; 1 Story's Eq. 330, sect. 338; 1 Fonblanque's Eq. B. 1, C. 2, sect. 12; 1 Mad. Ch. 118, state the result of the adjudications.

As some doubts are suggested by Mr. Justice Story, and by Mr. Jeremy, in the passages cited of their treatises, whether the strictness of the doctrine applies to cases of dealings, for remainders; it is deemed necessary to go into a slight review of the leading adjudged cases, to see if any conveyance resembling the present has been permitted to stand. It is but justice, however, to say, that I do not suppose either of those highly respectable authors intended to question the doctrine in a case like the present; where the estate in *reversion* descended upon an infant heir, encumbered with a life interest, and the expectancy was given to the tenant for life, within eighteen months after the heir came of age. That such purchase is

a *constructive* fraud, and the purchaser, if a stranger, compelled to account, and give up his bargain, if found to be advantageous; has not, for a century, been an open question. The conveyance is treated as a mortgage, and the grantor relieved on payment of the principal advanced and interest; without inquiry whether there was fraud or imposition.

The doctrine, during the seventeenth century, met with some opposition, especially in the reigns of Car. II. and Jac. II.; but in Nott v. Hill, 1 Vern. 169; 1 P. W. 310; Newland on Contracts, 436; and Bemey v. Pitt, 2 Vern. 14, it received the most conclusive confirmation short of the judgment of the house of lords. In the former case, Lord Ch. Nottingham decreed redemption (in his own phrase): on rehearing, Lord Keeper North reversed this decree, and refused relief: but this last decree was again reheard before Lord Ch. Jeffries, 2 Vern. 27, and reversed, and that of Lord Nottingham confirmed. So in Bemey v. Pitt, (the report of which is found in 2 Vern. 14; 1 P. W. 311; Newland Con. 347,) Lord Nottingham denied relief; but Lord Ch. Jeffries, 2 Jac. 2, on rehearing, reversed the decree, and let in the grantor to redeem on the usual terms of paying the money advanced, with interest.

In the case of Twisleton v. Griffith, (1716,) the exception was again invoked, that there was no fraud in fact; it was urged, that at this rate the heir of the remainder could not sell, as no one would buy; to which Lord Cowper replied: "This might force an heir to go home, and submit to his father, or bite on the bridle, and endure some hardships; and in the meantime he might grow wiser; and be reclaimed," 1 P. W. 313.

In Peacock v. Evans, 16 Ves. 514, the master of the rolls says: (when speaking of an heir selling the expectancy of a remainder during his father's life,) "To that class of persons, this court seems to have extended a degree of protection approaching nearly to an incapacity to bind themselves by contract;" and he cites with approbation the expressions of Lord Ch. Eldon, in Coles v. Trecotheck, 9 Ves. 234; that, "The cases of reversions and interests of that sort go upon a very different principle: in some, the whole duty of making good the bargain, upon the principles of this court, is upon the vendee, as in the instance of heirs expectant." And Sir William Grant added: "The tendency of this doctrine to render all bargains with such persons very insecure, if not altogether impracticable, seems not to have been considered as operating to prevent its adoption and

[Jenkins et al. v. Pye et al.]

establishment; but, on the contrary, some of the judges have avowed that probable consequence, as being to them the recommendation of the doctrine."

In the case referred to, it was admitted there was nothing approaching to fraud or imposition; yet the conveyance was set aside, because a full price had not been paid. All that could be said of it was, that Mr. Peacock had obtained a very advantageous bargain.

So in Gowland v. De Faria, 17 Vesey, 23, where a reversionary interest had been sold, in which the plaintiff's mother had a life estate, all fraud was denied; and no proof introduced, save that the consideration was not full: and in reply to the argument of manifest fairness, the master of the rolls replied: "In all these cases the issue is on the inadequacy of price. This is the case of a person who, in this court, is considered an expectant heir. He has charged his reversionary interest; and the question is, whether he has received an adequate consideration. Upon that question the evidence "is all one way:" and the conveyance was treated as a mortgage, vide Davis v. Duke of Marlborough, 2 Swanston, 147.

To cite other authorities to sustain the position assumed would justly be deemed an incumbrance; and I will only ask, had Eleanor Jenkins conveyed to a stranger instead of her father, could a court of chancery have refused her heirs relief, had they come in time?

And by way of introducing the next proposition, it will be submitted, whether her father stood upon higher ground than a stranger?

To a proper understanding of this question, a slight reference must be had to the facts, reported by the commissioner, as they appeared on the final decree in October, 1837. My brethren have given them some consideration, nor will I pass them by; although the pleadings it is apprehended exclude them, they will be taken in connection with the answers and admissions. George Jenkins, in 1813, and at his death, was a man of large wealth. He had two sets of children; one child by a first wife, and two by a second. The answer avers he procured the conveyance to do justice in his family. The account shows, that Eleanor's and George Jenkins's joint interests were worth when the deed was made in March, 1813, eight thousand nine hundred and ninety-two dollars and ninety-seven cents; and that about six months after the execution of the deed, George Jenkins caused to be vested in his daughter, Eleanor, two thousand dollars' worth of bank stock; which was sold by Mr. Pye shortly after he married Eleanor. Further than this, nothing was advanced to the daughter. George

Jenkins died intestate, as regarded his lands; whether by accident or design, matters nothing to the infant children who are plaintiffs. The answer avers, that the complainants by the intestacy are entitled to two-elevenths by their grandfather's estate; whereas were they to obtain the lands conveyed by the deed of 1813, and come in as joint heirs of the residue they would take more than one-half. What advances were made by their father, to the two children of George Jenkins, who are defendants, does not appear; but that they take nine-elevenths of the whole estate, by the intestacy, conclusively proves, if George Jenkins obtained the deed, " *best to enable him to do equal justice to all his family,*" that he did no such equal justice to his daughter Eleanor in her lifetime, or to her children at his death. He was a man of large wealth, and was bound to do equal justice, if the answer be true; and the defendants aver they personally know the fact to be so: and that this was the consideration of the conveyance. If it was obtained for one purpose, and the property applied to another; for instance, to advance the fortunes of the second set of children; it is well settled the deed should be set aside. To prove it, I need only cite the case of Young v. Peachy, 2 Atkyn's, 254, whose authority has never been questioned since Lord Hardwicke's time.

Again: Two thousand dollars in bank stock was a poor advance for a man of large wealth, having only three children, on the intermarriage of one of them; and we will take it that Eleanor was not intended to be turned off destitute.

The facts thus introduced from the commissioner's report, to control the effect of the first decree, (could they be heard for such purpose,) are therefore of no value, and cannot help the conveyance. How then did the father stand?

The jealousy with which courts of chancery watch contracts made by parents with children, is laid down with terseness and much accuracy by Mr. Justice Story in his lecture on constructive frauds. 1 Story's Ch. 306. He says: " The natural and just influence which a parent has over a child, renders it peculiarly important for courts of justice to watch over and protect the interests of the latter; and therefore all contracts and conveyances, whereby benefits are secured by children to their parents, are objects of jealousy; and if they are not reasonable under the circumstances, they will be set aside."

Mr. Newland in his treatise on contracts, chapter 30, page 445, gives the result of the authorities with great clearness and force; and

the accuracy of which is fully borne out by the cases. " It is a natural pr'sumption," says he, "that a parent possesses influence over the mind of his child. Equity therefore regards with a jealous eye contracts between them; and very properly considers this relation to give *additional weight and suspicion* to circumstances of fraudulent aspect, which the case may involve." And Lord Hardwicke said in Young v. Peacy, 2 Atk. 258, where the transaction in its leading features much resembled this; the father having obtained a voluntary conveyance from a daughter : " But the case is greatly strengthened when it comes to be considered that this was a recovery obtained by a father from his child; and when this is the case, it affords another strong circumstance in order to relieve the plaintiffs."

The British adjudications, uniformly and firmly supporting the doctrine, are cited by the writers above referred to. 1 Story's Eq. 306, Newl. 445, Madd. Chancy. 310; and with which I will rest content: adding, however, that the case before us, is as bare of alleviating circumstances, tending to exempt it from the general rule, as any I have found reported, or known in my experience in life. Had the conveyance been made to a stranger, it could not have been tolerated for a moment; and having been made to the father, in the language of Mr. Newland : " The relation gives additional weight and suspicion to the circumstances which the case involves." Its decision rests not on discretion, but on settled rules of property; which, it is supposed by me, should not be disturbed.

But first, more than twenty years elapsed from the execution of the conveyance to the time of filing the bill; and second, it was not filed until after George Jenkins's death. The daughter and her heirs having been at all times since 1813 free to sue; and having had the means, and being under no undue restraint, the presumption is, that time has destroyed the evidence going to prove the fairness of the transaction; or that if the suit had been brought in the grantee's lifetime, he could have adduced it. I confess, however, it is with some difficulty the presumption can be maintained, under the circumstances of this cause, by the British adjudications; yet, our migratory habits, and the consequent loss of evidence are such, that presumptions founded on time must in this country, be firmly supported, without letting in doubtful exceptions to destroy their force: especially when those in whose knowledge the facts rested, which might have explained the transaction, are dead : as in Brown v. Carter, 5 Ves. 875, where the bill was brought to set aside a settlement under

an agreement between father and son, made in 1769. The convey-ance was voluntary, as in the instance before the Court. The father died in 1793 : up to which time no complaint had been made; and very soon after the bill was filed. The Court held, that, " though transactions of this kind will be looked at with jealousy, that the father should not take an improper advantage of his authority; the complaint must always be made in time; not after the father is dead," &c.

The same doctrine was held by Lord Eskine in Morse v. Royal, 12 Ves. 376; and relief refused because of the lapse of time and the death of witnesses.

The British case, however, which has most laboured this question, is that of Chalmers v. Bradley, 1 Jac. & Walk. 58; in which the authorities are referred to, where the claims of expectant heirs to have decrees for accounts, and the rescission of contracts, were re-jected, because of the lapse of time intervening between the date of the contract and the filing of the bill.

The general doctrine, that full force will be given to presumptions founded on time, and that stale demands will not be enforced to compel parties to account, nor to disturb contracts or possessions, is established on a very firm footing as the doctrine of this Court, in Ricard v. Williams, 7 Wheat.; Hughes v. Edwards, 9 Wheat.; Wil-lison v. Watkins, 3 Peters; Miller v. M'Intyre, 6 Peters; Piatt v. Vattier, 9 Peters; and other decisions. But the difficulty in such cases as the one before the Court is, that the expectant heir is usually destitute, ignorant of his rights, and not on an equal footing with his vendee: and the courts of chancery presume that he contracted in sub-serviance to circumstances, either of helpless poverty or ignorance; or at least superior knowledge of facts on part of him with whom he contracted. When the facts proved are in accordance with the pre-sumption, and establish that the same condition continued to the date when suit was brought, time has not been strictly regarded in England; and chancery has frequently proceeded to afford relief, disregarding the length of time, upon evidence of a continuing op-pression and poverty, or concealment. This cause has certainly in it circumstances to raise difficulties. Eleanor Pye married within two years, and died within five after the conveyance was made; and the complainants were at her death, (and so continued until they sued,) infants. Yet I think no account should have been ordered, nor the conveyance impeached, after the lapse of twenty years,

[Jenkins et al. v. Pye et al.]

and after George Jenkins's death; and concur that the bill be dismissed.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the District of Columbia, holden in and for the county of Alexandria; and was argued by counsel.    On consideration whereof, it is decreed and ordered by this Court, that the decree of the said circuit court in this cause be, and the same is hereby reversed; and that this cause be, and the same is hereby remanded to the said circuit court, with directions to dismiss the complainants' bill.