## WILLIAMS v. CANARY.

(Circuit Court of Appeals, Eighth Circuit. March 2, 1918.)

No. 4934.

1. PARENT AND CHILD ⬥9—CONTRACTS—VALIDITY.

While equity will closely scan a contract between a parent and his child, entered into shortly after the child reached his majority, yet the contract is not prima facie void, and where not unconscionable, and made by the child with complete understanding, will not be stricken down.

2. GUARDIAN AND WARD ⬥131—CONTRACTS—VALIDITY.

Where a guardian, shortly after a ward reached his majority, or while any of the guardianship duties were yet to be performed, contracted with the ward, the guardian has the burden of showing that the transaction was fair and reasonable, and that no advantage was taken.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. GUARDIAN AND WARD ⬩⭢69—CONTRACTS—STATUTE—CONSTRUCTION.

The purpose of Rev. Laws Okl. 1910, §§ 3339–3341, providing that a guardian shall not be discharged until a year after his ward's majority, is to provide a period for the orderly review of the guardian's acts and the settlement of his accounts, and not to extend his authority over the ward's estate, or its accompanying disqualification; so a contract, between a guardian and ward within the year period is not for that reason invalid.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit by Emma P. Williams, née Canary, against James D. Canary. From a decree dismissing the petition, plaintiff appeals. Affirmed.

Malcolm E. Rosser, of Muskogee, Okl. (George S. Ramsey, of Muskogee, Okl., and Edgar A. De Meules and Villard Martin, both of Tulsa, Okl., on the brief), for appellant.

Joseph B. Tomlinson, of Independence, Kan., for appellee.

Before HOOK and SMITH, Circuit Judges, and TRIEBER, District Judge.

HOOK, Circuit Judge. This is a suit by Emma P. Williams, formerly Canary, against James D. Canary, to cancel an oil and gas mining lease of a tract of land in Oklahoma patented to her as a Cherokee allottee, and also a working contract supplemental to the lease, upon the ground that he obtained them by fraud and undue influence. At the hearing on the merits the trial court held the instruments valid and dismissed the petition. The plaintiff appealed.

The defendant is plaintiff's father, and had been the guardian of her estate during her minority by appointment of the court having cognizance of such matters. A prior lease to an oil company, executed by him as her guardian, had just expired with her minority. There were at that time 10 producing oil wells on the property. The lease and the contract in controversy were executed the day after the plaintiff became of age, and that circumstance is now principally relied on to invalidate them. The trial court found from the evidence that plaintiff voluntarily executed the instruments and fully understood their terms; also that their provisions were more advantageous to her than she could at the time have obtained from others or by her own operation of the property. We concur in this conclusion, and if further assurance were needed it would appear from plaintiff's acquiescence in the transaction and the receipt of its substantial fruits for more than six years before this suit was brought, during the last four of which she was married and living apart from her father. The suit is quite without warrant or foundation in any fact aside from the time the lease and the contract were made.

[1] A child, upon attaining majority, becomes clothed with contractual capacity, and that necessarily implies the power to pick both subject-matter and parties and to bind himself equally with those with whom he deals. There is nothing in the law that fixes a further period of disqualification for the parent. A contract between parent and major child cannot be said to be prima facie void in law, or for

⬩⭢For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that reason to be so doubtful as to impose an affirmative burden of justification. Jenkins v. Pye, 12 Pet. 241, 9 L. Ed. 1070. It is common experience, however, that the influence, personal confidence, and trust incident to that relation do not ordinarily end with minority, but continue in varying degrees and afford favorable opportunities for imposition and abuse. Because of this, the transaction, when assailed in a court of equity, will be examined with a searching eye to discover whether in all the circumstances a fraudulent or unconscionable advantage has been taken, and in the inquiry its proximity to the time of majority will be regarded. But equity will not condemn in the face of perfect knowledge, understanding, free consent, and good faith by those concerned.

[2] In the case of a transaction between guardian and ward at or near the time of emancipation, and while any of the guardianship duties are yet to be performed, the rule is more strict. Equity casts upon the guardian the burden of showing that the transaction was understood, was fair and reasonable, and that no advantage was taken. Harper v. Taylor, 113 C. C. A. 572, 193 Fed. 944; 2 Pom. Eq. Juris. § 961. As we have seen, that burden was discharged in this case.

[3] There is a contention that, as a statute of Oklahoma provides that a guardian appointed by a court is not entitled to his discharge until a year after his ward's majority, the relation between plaintiff and defendant still existed at the time of the transaction, and therefore the latter was wholly disqualified to contract. But the statute was to provide a period for the orderly review of his acts during guardianship and the settlement of his accounts. It was not intended as an extension of his authority over the ward's estate or its accompanying disqualification. The same statute authorized the ward upon coming to majority to settle accounts with his guardian and give him a release which would be valid if obtained fairly and without undue influence. Rev. Laws Okl. 1910, §§ 3339, 3340, 3341.

The decree is affirmed.