## CAPITAL FIRE INS. CO. v. CARROLL *et al.*

No. 242.    Opinion Filed May 10, 1910.

(109 Pac. 535.)

1.    **INSURANCE—Policy — Ambiguity—Construction.**    If language in an insurance policy is ambiguous and susceptible of two constructions, one of which will give the policy effect, the other render it void at the time of its execution, that construction should be adopted which will make the policy effective.

2.    **INSURANCE—Action on Policy—Burden of Proof—Falsity of Statements in Application.**    The burden of proving that statements of the insured in his application for a policy of fire insurance, which by the terms of the policy are made his warranty, are untrue, and that a condition of the policy essential to its validity has been violated by the insured, is upon the insurer when it seeks to avoid the policy upon such grounds.

3.    **WORDS AND PHRASES — "Roller Mills."**    The term "roller mill," in its general sense, includes any form of mill for the coarse grinding of grain for feed, and may include a mill and machinery used for the purpose of manufacturing meal, bran, and other feed products.

4.    **INSURANCE—Construction of Policy — Property Covered.**    A policy of insurance which described the property insured as a frame building "while occupied as a flour and roller mill" and the fixed and movable machinery, pipes, belting, pulleys, shafting, roller mills and appurtenances, smut mill and appurtenances, purifiers, blowers, dusters, tools, etc., "and such other machinery not more hazardous as is usual to roller mills," will be held to include machinery used in the manufacture of meal, bran, and other feed products, where not to do so will render the policy void from its execution.

5.    **INSURANCE — Construction of Policy—"Ceased Operation."**    A policy of insurance covering a mill plant for the manufacture of flour, meal, bran, and other feed products contained a stipulation that the entire policy shall be void if the manufacturing establishment ceases to be operated for more than 10 consecutive days. The mill was not operated for the purpose of manufacturing flour at the time of the issuance of the policy and for a longer period than 10 days thereafter, but was at the time of the issuance of the policy, and continued to be thereafter until the property was destroyed, operated in the manufacture of meal, bran, and other feed products. **Held,**

that the establishment had not "ceased operation" within the meaning of the policy.

6. **APPEAL AND ERROR—Review—Necessity for Exceptions Below.** This court will not consider alleged errors of the trial court, unless such alleged errors appear in the record of the case and exceptions were taken thereto in the trial court.

(Syllabus by the Court.)

*Error from District Court, Pittsburg County; Preslie B. Cole, Judge.*

Action by John F. Carroll and others against the Capital Fire Insurance Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

*C. S. Collins* and *Boles & Boles,* for plaintiff in error.

*James S. Arnote,* for defendant in error.—On construction of "ceasing operation": *Bole v. New Hampshire Ins. Co.,* 159 Pa. St. 53. Construction favoring the insured: *Thompson v. Ins. Co.,* 104 U. S. 252; *Conn. F. Ins. Co. v. Jerry,* 60 Neb. 338.

HAYES, J. This is an action on two fire insurance policies, each for the sum of $1.500, brought by defendants in error, hereinafter called plaintiffs, against plaintiff in error, hereinafter called defendant, in the United States Court for the Central District of the Indian Territory, at McAlester, prior to the admission of the state. After the admission of the state, the cause was transferred to the district court of Pittsburg county, where a trial to the court without a jury on an agreed statement of facts was had, and resulted in a judgment in favor of the plaintiffs for the amount of the policies and interest thereon. It is to reverse that judgment that this proceeding in error is prosecuted.

Defendant admits the execution and delivery of the two policies and the destruction of the property insured, but defends against any liability under the policies upon the ground that certain representations made by the plaintiffs in their application for the policies were untrue; and that certain conditions of the policies essential to their validity had been continuously violated by plaintiffs prior to the destruction of the prop-

erty.   Plaintiffs, in their reply to defendant's answer in which
the foregoing matters are set up, make denial of the affirmative
allegations in the answer, and plead an estoppel against defend-
ant's pleading the forfeiture of said policies upon the ground al-
leged in its answer.   The policies of insurance were issued upon
the written application of plaintiffs therefor.   Their applications
were made upon a printed form of application for insurance on
cotton gins which the parties attempted to adapt to their pur-
pose by erasing some of the printed provisions and interlining
others.   The schedule of items to be insured appears as follows:
"Atlas, Engine, val. $800, insurance $500; building $1,500,
insurance $500; flour mill $3,500, insurance $2,000."   Following
and immediately to the right of the foregoing schedule appears
the following more detailed description of the property (the italic-
ized words represent the words written into the application; the
others are in print.   We insert also the words struck out):

"(1) On *50 H* power *2* story built of *wood* with rubber roof.
(2) On fixed and movable machinery of all kinds (excepting en-
gine and boiler appurtenances), while set up for use, including
gin stands, feeders, condensers, dust and lint flues, cotton press
and appurtenances, suction elevators, fans, vacuum boxes, dis-
tributers, piping, pulleys, seed blowers, seed feeders, conveyors,
shafting, belting, hangers, journals, tools, piping and hose, all
only while contained in the above-described mill.   (3) On boiler
house, built of *iron* with *iron* roof 30 feet from mill.   (4) On
engine and boiler, including all connections. foundations, pumps
and heater, and smokestack, while contained in above described
*Boiler House.*   (5) On gristmill, all while contained in.   *   *   *"

Paragraphs 6, 7, 8, and 9 thereafter following pertain to cot-
ton gins only, as do also provisions 11 and 12 which were struck
out.   Clauses 10 and 13 read as follows:

"(10) On cotton *grain* held in trust or on commission for
which assured may be liable while in said mill.   (13) On tools con-
tained in above *mill.*"

On the back of the application are certain questions and an-
swers made thereto by plaintiffs, which, by the terms of the ap-
plication, are made a part thereof, and the application by the
terms of the policies is made a part of the policies, and plaintiff's

statements therein are made their warranties, and a condition upon which the insurance was issued. Question No. 7 of the application reads:

"Will the building or machinery be used, during the term of the policy, for any other purpose than milling? If so, for what purpose? State fully. (Answer.) *For mill purposes only.*"

Question No. 67 reads:

"Will the property to be insured be in continuous operation during the season? (Answer.) *Yes.*"

Then occurs the following statement:

"The property has been and is profitable, and applicant has every reason to believe it will continue to be so."

Each of the policies contains the following provision:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void. * * * if the subject of insurance be a manufacturing establishment, if it be operated in whole or in part at night later than 10 o'clock, or if it ceased to be operated for more than ten days. * * *"

Defendant contends that it is not liable in this action for the reason that the representation of plaintiffs in their application that the property described therein had been and was profitable at the time of said application, and that they had every reason to believe it would continue to be so, was untrue, and for the further reason that the property insured was not at the time of the application for the policies and was not thereafter until the destruction of the property by fire, which occurred about eight months after the issuance of the policies, operated as a flour mill. In the agreed statement of facts it is admitted that no part of the property was at the time of the application for the insurance, and for some time theretofore, and was not thereafter up to the time of the fire, operated in the manufacture of flour, but that it was at all of said times idle and unused for that purpose. It is admitted, however, that in the same building there was certain machinery, the exclusive use of which was for the manufacture of corn meal, bran, chops, and feed; that said last-mentioned machinery and a large portion of the machinery for making flour

Vol. 26—19

was used at the time of the application for their insurance, and was continually used thereafter, until the destruction of the property, for the purpose of manufacturing corn meal, bran, chops, and feed. A portion of the machinery in the building, admitted by defendant to be covered by the policies, was adapted for the use of the manufacture both of flour and of corn meal, bran, chops, and feed. Another portion of the machinery was suitable to be used only for the purpose of manufacturing flour. Another portion of the machinery which defendant contends was not covered by the policies was used exclusively in the manufacture of corn meal, bran, chops, and feed.

Under the view we take of this case, the correctness of the judgment of the trial court turns upon the question whether the policies covered only those portions of the machinery adapted for use in the manufacture of flour, or whether it covered all the machinery including that used exclusively for the manufacture of meal and feed products. If the application contained no description of the property to be insured other than that given in the general terms of the three items first set out above, there could be little or no ambiguity in its language, but that applicants intended that the printed paragraphs following and above set out should be considered as a part of the description of the property to be insured is evidenced by the fact that the blanks in these various paragraphs are filled out and some of the paragraphs that do not pertain in any way to the class of property insured were struck out. Among the items of property mentioned in the printed paragraphs is the "grist mill." The property insured is described in each policy as follows:

"Item No. 1. $250 on their two-story frame building with comp. roof, while occupied as a flour and roller mill, and situated on lots 1, 2, 3, block 141, south part of McAlester, Indian Territory.

"Item No. 2. $1,000 on their fixed and movable machinery pipes, belting, pulleys, shafting, roller mills and appurtenances, smut mill and appurtenances, purifiers, blowers, dusters, tools, etc., and such other machinery not more hazardous as is usual to roller mills; all while contained in the above-described building.

"Item No. 3. $250 on their sixty horse power Atlas engine, while contained in their boiler and engine room in above described building."

In the first item, the language used to describe the occupancy of the building is not "while occupied as a flour mill or as a roller mill," but as a *flour and roller* mill. In item No. 2, after language comprehensive enough to describe all of the machinery constituting the flour mill and its appurtenances had been used, there is added thereto the clause: " And such other machinery not more hazardous as is usual to roller mills; and all while contained in the above-described building." Defendant insists that the term "roller mill" is synonymous with flour mill, and that the language used in the policy cannot and does not include milling machinery used for the manufacture of meal, bran, and chops.

The Century Dictionary, vol. 6, p. 5215, defines a roller mill to be:

"(1) Any form of mill for the coarse grinding of grain for feed. Specifically (2) a mill in which wheat is made into flour by a cracking process, passing between sets of rollers arranged consecutively at fixed distances apart; (3) a machine for bruising flax seed before grinding under edge-stones and pressing."

In Webster's International Dictionary, p. 924, it is defined as, "A mill in which flour or meal is made by crushing corn between rollers."

It is contended by defendant that the meaning intended by the word as used in the policies is the specific definition given in the Century Dictionary, and that it was intended to include only the mill for making wheat into flour, and that these words were not intended to be used in the general sense of the first definition given above. There are several reasons why we cannot concur in this contention. The policies contain a stipulation which provides that "no officer, agent or other respresentative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such

provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the issuance under this policy exist or be claimed by the insured unless so written or attached."

There are no written indorsements upon the policies of waiver of any of the conditions thereof. This same provision of a fire insurance policy was held by the Supreme Court of the United States in *Northern Assurance Co. v. Grand View Building Association,* 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213, to be valid, and that a condition stipulated in a policy of fire insurance as essential to the existence of the company's liability thereunder is not waived by knowledge of the agent who countersigned and issued the policy that such condition stipulated for did not exist and was violated at the time of the issuance of the policy; and that such knowledge did not estop the company from pleading a forfeiture of the policy. The Supreme Court of the United States was the court of final appellate jurisdiction over judgments rendered by United States courts of the Indian Territory, and it was held by this court in *Sullivan v. Mercantile Town Insurance Co.,* 20 Okla. 460, 94 Pac. 676, that the rule announced in the *Northern Assurance Co. v. Grandview Building Association Case, supra,* should control and be followed by this court in causes founded on insurance contracts executed in the Indian Territory, on which suit had been instituted prior to the admission of the state.

Under the authority of these cases, if the policies in the case at bar did not cover that portion of the machinery used in manufacturing meal, bran, and other feeds, and covered only that portion of the machinery used in making flour, then the policies were void from the beginning, because it is admitted that the machinery was not at that time, and had not for some time prior thereto and has not since been, operated as a flour mill, and consequently could not have been profitable for that purpose at the time of the application, and it is further admitted that it was not the intention of the applicants at that time to use the machinery for such purpose within the immediate future. It is also admitted that the agent

of the company who countersigned, issued, and delivered the policy knew these facts. If the language in the policies descriptive of the property covered by them is to be construed as contended for by defendant, then it must be held that the company acting through its agent went through the formality of executing an agreement that it knew not to be a binding contract, and did not intend it to be a binding contract, and received from plaintiffs premiums thereon in the sum of $150; and that plaintiffs, who must be presumed to have known the contents of the contract, accepted the same, knowing that it was without binding force upon the insurance company, and in fact no ·contract whatever, and paid therefor their money.

It is a familiar rule of construction that ambiguous language of a policy, susceptible of two constructions, will be given that construction which will give the policy effect rather than that which will make it void. Kerr on Insurance, p. 130. Again, it is a rule recognized by all the authorities that where the meaning is ambiguous or if the policy is so drawn as to be fairly susceptible to two different constructions, the same will be strictly construed against the insurer, and that construction adopted which is most favorable to the insured. This is a just rule, because policies generally as in this case are drawn by the insurer, and it is its language that the court is invited to interpret. Policies of insurance, as other written contracts, cannot be altered, varied, or contradicted by parol evidence; but if the meaning of the language used in the contract is ambiguous or obscure, courts may look to the circumstances surrounding the transaction which resulted in the issuance of a policy and the nature and subject-matter of the risk and relation of the parties to discover what was the actual purpose of the parties and the meaning they intended to convey by the language used by them. *Merchants' Mutual Insurance Co. v. Lyman,* 15 Wall. 664, 21 L. Ed. 246; *Union Mutual Life Ins. Co. v. Mowery,* 96 U. S. 544, 24 L. Ed. 674.

It is admitted that the general agent of the company who issued the policies was, before issuing them, familiar with the facts upon which defendant now relies to avoid them. If the

language in these policies is reasonably susceptible of two constructions, one that includes only the flour mill machinery and another includes all the machinery, and the latter construction renders it a binding and enforceable contract at the time of its execution and the former renders it ineffective, then the latter construction should be adopted. The description of the occupancy of the building in the first item is that of a *flour* and *roller* mill. If *roller mill* was intended to mean only *flour mill*, then the use of the word *roller* in this paragraph has no force or effect whatever. And, again, in the second item of the policies, it is not to be presumed that after using language sufficiently comprehensive to include every piece of machinery used in the manufacture of flour alone, or in the manufacture of flour and meal, that the subsequent phrase "and such other machinery not more hazardous as is usual to roller mills" was used for no purpose. We think it was the intention of the parties that the entire milling plant of the applicants should be included in the policies. The only evidence in the record from which it may be inferred that the property insured was not profitable at the time application was made for the insurance, and that applicants did not have every reason to believe it would continue so, is the admission that it was not operated for manufacturing flour. There is no evidence whatever that the mill, as operated for the purpose of manufacturing meal and feed, was not profitable at the time the application was made and did not continue to be so. The burden of proving a breach of plaintiff's warranty was upon defendant. *Piedmont & A. Life Ins. Co. v. Ewing*, 92 U. S. 377, 23 L. Ed. 610. For aught that appears in this record, the mill as operated may have been highly profitable; at any rate, it will not be presumed in the absence of evidence that it was unprofitable.

Did plaintiffs' manufacturing establishment cease to be operated for more than 10 consecutive days in violation of the policy? We think not. Discussing a similar provision, the court in *Bole v. Insurance Co.,* 159 Pa. 56, 28 Atl. 206, said:

"This appeal depends on the meaning of the words 'cease to

be operated for more than ten days,' found in the provision we have quoted from the policy.   In determining the meaning of these words we must remember that words having no fixed technical meaning should be taken in their natural and obvious sense; that a provision capable of two or more meanings should be construed most strongly against him whose undertaking it is; and that the circumstances surrounding the parties when the contract was made, and affecting the subject to which it relates, form a sort of context that may be resorted to in doubtful cases to aid in arriving at the meaning of the contract."

In that case the policy was issued after the proprietor of the manufacturing establishment had failed.   His property was in the hands of the assignees who were seeking insurance.   The machinery of the plant was not in operation at the time and had not been for some time.   The manufacturing processes were discontinued, but the sale of goods on hand was continued by the assignees and the factory was occupied regularly for that purpose. The court held that the sale of the manufactured products was one branch of the operation of the factory; and since such sale was being conducted in the factory and continued to be down to the time of the fire, the operation of the factory had not ceased, within the meaning of the policy.

While considering a similar question, the court in *American Fire Insurance Co. v. Brighton Cotton Manufacturing Co.*, 125 Ill. 131, 17 N. E. 771, used the following language.

"The ceasing to perform any one thing, for the time being, of the many required to be done, would certainly not be to cease to operate the factory. Any one might be temporarily suspended, and yet the factory be said to be in successful operation.   'Carding and spinning' is not all that is included in a 'cotton factory.'   There must be the engine to drive the machinery, and fuel to make steam.   The goods, when manufactured, must be put up and labeled, and when prepared for the market, must be sold and shipped or delivered, and the doing of any one of these many things is a part, and even an essential part, of the operation of a large factory.   Nor is the ceasing to do any one of them for a shorter or a longer period ceasing to operate the factory.   'Carding and spinning,' is no more all of the operation of a great factory than the sale of the

fabrics when produced. Many, very many things, are included in the operation of a factory the doing of which is necessary to its successful management. The operation of an extensive factory does not mean it shall be kept employed in all its various departments every day—that is, all the time. It would be unreasonable to construe the contract in this policy that it means the factory, in all its departments, shall be kept in ceaseless motion. No one supposes it means that. It may properly be closed down over Sundays and all legal holidays, or for any cause that a prudent manager of such establishment would deem prudent and best for the interests of the owners. On the same principle, one department may be kept in operation and others cease temporarily. It might be the fabrics manufactured might be in excess of the sales or the demands of trade, and for that reason a prudent superintendent might deem it best to stop the spindles and the looms for a reason, or sales might be in excess of supplies, and for that reason, no goods would be contracted for a time. Would any one say that such partial stoppage would be a violation of the contract of insurance contained in the policy in suit? So narrow a construction would make the contract of no value to the assured, and to observe it would render the usual and ordinary management of such an establishment impracticable."

The foregoing reasoning of the court appears to us sound and apposite to the facts of this case. The establishment here insured is a milling plant, which, when operated in all of its departments, manufactures flour, meal, bran, and other feed products. The language of the policy is that if the establishment cease to be operated for more than ten consecutive days, not that if any department shall not be operated for that time, the policy shall be void. It may be that during certain periods of the year the demand for the products of one department is greater than for the products of other departments. It may become necessary to cease for a period the operation of one department, in order to increase the output of the other department to meet the demands of business. For plaintiffs so to adjust the operation of their plant to meet the varying demands for their products, is not inconsistent with the intention of the parties. The application only states that property insured will be in continuous oper-

ation during the "season," and, the application having been made part of the policy, it is as binding upon the insurer as the insured.

In the agreed statement of facts certain facts are agreed by defendant to exist, but it reserves the right to object to the competency of such facts as evidence in the case, and it makes such objections as basis of assignments of error here; but the record fails to disclose that the trial court ever ruled upon said objections and what his rulings thereon were, or whether any exception was reserved thereto by defendant. This court will not consider alleged errors of the trial court, unless such alleged errors appear in the record in the case, and exceptions are taken thereto by the complaining party. *Saxon v. White,* 21 Okla. 194, 95 Pac. 783; *Dunlap & Taylor v. Flowers,* 21 Okla. 600, 96 Pac. 643; *Ecker v. Ecker,* 22 Okla. 875, 98 Pac. 918, 20 L. R. A. (N. S.) 421.

Finding no error requiring a reversal of the cause, the judgment of the trial court is affirmed.

All the Justices concur.