## TURNER v. TURNER et al.

No. 2527.   Opinion Filed January 9, 1912.

(121 Pac. 616.)

**PARENT AND CHILD—Gifts—Validity.** Under the rule existing in the Indian Territory, the existence of a fiduciary relation between a parent and his child was not necessarily fatal to a deed or gift from the former to the latter, it being held by the federal courts that such a deed or gift was natural and reasonable, and sustained by the presumption that it was inspired by parental affection and devotion; this presumption overcoming the ordinary presumption that an unnatural or unreasonable gift procured through a fiduciary relation was void, and the burden was upon those who assailed it to show that it was procured by the exercise of unlawful or fraudulent undue influence.

(Syllabus by the Court.)

*Error from Superior Court, Muskogee County;*
*Ezra Brainerd, Special Judge.*

Action by Julia A. Turner against Fred E. Turner and others. Judgment for defendants, and plaintiff brings error.   Affirmed.

*Chas. Bagg, Maxey, Campbell & Beall,* and *Stuart, Cruce & Gilbert,* for plaintiff in error.

*J. W. Zevely, J. M. Givens* and *Edgar Smith,* for defendants in error.

DUNN, J. This case presents error from the superior court of Muskogee county, and is a suit in equity originally brought by plaintiff in error, hereafter called plaintiff, against defendants in error, hereafter called defendants, in the United States Court for the Western District of the Indian Territory in July, 1907. The object of the suit is, first, to secure a decree canceling two deeds, one made by the plaintiff to the defendant, Fred E. Turner, dated October 7, 1901, which conveyed an undivided one-half interest in the property involved, and another deed made by the plaintiff and the defendants, Fred E. Turner and Gunter M. Turner, to their codefendant, the Old Homestead Company, a corporation, conveying the whole of the property; and, second, to compel an accounting by the said Fred E. Turner and to secure the appointment of a receiver to take charge of the property. The plaintiff, who was a widow at the time of the occurrences hereinafter set out, is the mother of Fred E. Turner, and in the amended complaint upon which the trial was had it is alleged that since the death of her husband in December, 1898, her said son had had the absolute and entire control and management of the property and estate of plaintiff, and had been her sole and only trusted agent and adviser, and had her unlimited confidence, respect, esteem, and love; that she was an old woman more than 70 years of age, unaccustomed to business affairs, and suffering from the usual physical weakness and infirmities incident to persons of her advanced age; that while her said son was in absolute management and control of her property and estate he, by the exercise of fraud and undue influence, induced her to execute a deed to him conveying an undivided half interest in and to the property in controversy; that said deed was without any consideration whatsoever; that thereafter and in November, 1903, her said son organized the defendant, the Old Homestead Company, a corporation, and by the further exercise of fraud, duress, and undue influence induced her to join the said corporation, and on the 1st day of April, 1904, and during the continuance of the confidential relations referred to, and while the said son was in sole charge of all of her property and estate, by the exercise of fraud, duress, and undue influence practiced upon her, induced her to join him

and his said wife, Gunter M. Turner, in a deed to the whole of said property to the said company; that the same was without consideration, except that, as it developed, she was given 999 shares of capital stock of the said concern, whose whole capital stock consisted of 2,000 shares, the said son taking an equal number of shares with plaintiff and the other shares being given one to the wife of said son, Gunter M. Turner, and the other to his personal attorney. To the allegations of this amended complaint the defendants, the Old Homestead Company and the said son and his wife, filed their joint answer, in which the defendants admit the execution and delivery of the deeds to the property in question, but denied that plaintiff made the same by reason of the exercise upon her by the said son, of fraud, duress, or undue influence, or that the same were secured by means of false promises, representations, or threats or cajoling, or by the misuse or abuse of the confidence, love, or respect, which the said plaintiff reposed in her said son. The deed of the plaintiff of the date of October 7, 1901, recited the consideration thereof as the sum of $5, and "my natural love and affection for the grantee, my son." There is recited in both the complaint and the answer many details which were eliminated either on the trial or are not insisted upon in this court.

On the question of the appointment of a receiver, evidence was taken before a master prior to statehood, and, on consideration thereof, the application was denied. After statehood, a second application to have a receiver appointed was made by the plaintiff in the district court of Muskogee county, and the same was again denied. The accounting demanded by the plaintiff was had before a special referee appointed for the purpose of taking the testimony showing the revenue derived from the property and the disposition thereof. On the erection of Oklahoma as a state, the action was transferred from the United States Court for the Western District of the Indian Territory to the district court of Muskogee county, and thereafter transferred from that court to the superior court of the said county, wherein trial was had before Ezra Brainerd, Esq., the judge of the court having been of counsel, and hence disqualified. At the conclusion

of all of the evidence, the court rendered a written opinion in which the facts established were set out and except for the conclusions which it is insisted should be drawn therefrom may be said to be almost without material contradiction. In this opinion the court found that:

"At the time of the execution of the deed by the plaintiff to Fred E. Turner the plaintiff was about 73 years of age. Her mind was somewhat weak, but not unsound. She resided in the home place at Muskogee, while the defendant Fred E. Turner was engaged in business in the city of Tulsa. He made frequent visits to his mother at Muskogee prior to the execution of this deed,"

—and that:

"A vast amount of testimony was introduced and a very broad scope was taken in the examination of witnesses, but the same is insufficient in the mind of the court to sustain the contention of the plaintiff. The deed of October 7, 1901, was prepared by Major Z. T. Walrond, an honored and distinguished member of the bar of this court, who also took the plaintiff's acknowledgment of the execution of said deed. The testimony shows that the contents of the deed were read to the plaintiff, and that she acknowledged the same as her free and voluntary act. Fred Turner was present at the time, but the evidence fails to show that he exercised any undue influence over his mother in the matter of the execution of this deed, and his mere presence in the room at the time cannot be presumed to have had that effect. The gift was a result of the plaintiff's own suggestion, made at a time when she possessed for her son a warm, motherly affection, with a resulting degree of confidence and trust in his ability and integrity. The deed executed by the plaintiff and her son, Fred E. Turner, and wife of April 1, 1904, to the Old Homestead Company, was for a valuable consideration, and, while the necessity for or the advantage of transferring the property to a corporation was not perhaps fully understood by the plaintiff, yet the evidence shows that the same was knowingly and voluntarily done by the plaintiff, and was in effect a confirmation of her deed of October 7, 1901."

An order was thereafter prepared by counsel for defendants which was signed by the court, in which it was recited that the deeds from plaintiff to the defendant Fred E. Turner were not procured through fraud, or undue influence, or other unlawful means, but that plaintiff understandingly, knowingly, and vol-

untarily conveyed title to the property to Fred E. Turner, and that she understandingly, knowingly, and voluntarily joined in the deed of April 1, 1904, to the codefendant, the Old Homestead Company, and that the plaintiff should take nothing by her suit. After motion for new trial was filed and denied, the cause was duly and regularly lodged in this court for review.

There is virtually but one question presented for the determination of this court on this appeal, which is the sufficiency of the evidence to sustain the averments of plaintiff's bill. We have had the advantage of an oral presentation of the case by able counsel, and have carefully read the several hundred pages of briefs filed for the respective parties as well as the record, and, while from the view which we take of the entire controversy the legal propositions presented are not difficult, the amount involved has induced us to give the claims and contentions of counsel a more painstaking consideration than their difficulty would otherwise demand.

It cannot be doubted that a gift of property by a person of sound mind, when made with full intention and knowledge of the act and is accepted, is on the part of the donor irrevocable. *Russell's Appeal,* 75 Pa. 269; *McElroy v. Masterson,* 156 Fed. 36, 84 C. C. A. 202. This proposition is not controverted on the part of counsel for plaintiff, but they insist that, where the donor is a parent and the donee is a child, the law raises a presumption against the validity of the gift, and that the burden is placed upon the donee to rebut this presumption, and it is insisted in the case at bar that, in addition to the relationship of parent and child, there was by reason of the fiduciary and confidential relationship between the plaintiff and her son, Fred E. Turner, a strong and controlling reason for the operation of this presumption, and that, when these conditions were shown to exist, then the burden was upon the donee to establish the indefeasibility of the gift and give proof of valuable consideration and *bona fides.*

In Bailey on *Onus Probandi* and Preparation for Trial (pages 317, 318), under the title "Fiduciaries," after speaking of the rule of burden of proof in the case where confidential relations are shown to have existed, it is said that the burden of proof

devolved upon the party attacked to prove a negative; that is, to show that the transaction was fair and honest, and above all suspicion, and that transactions between persons standing toward each other in confidential relations are affected upon a principle of public policy. with the presumption that an undue influence had been exercised which placed the proof upon the party claiming to uphold the transaction to show that the presumption was adequately rebutted. The author then said:

"According to the English doctrine, the relation of parent and child is embraced, but the Supreme Court of the United States unanimously decided that the doctrine is not applicable to such relation."

This principle seems to be upheld by the following authorities: *Jenkins et al. v. Pye et al.*, 12 Pet. 241, 9 L. Ed. 1070; *Mackall et al. v. Mackall et al.*, 135·U. S. 167, 10 Sup. Ct. 705, 34 L. Ed. 84; *Towson et al. v. Moore et al.*, 173 U. S. 17, 19 Sup. Ct. 332, 43 L. Ed. 597; *Sawyer v. White,* 122 Fed. 223, 58 C. C. A. 587; and *McElroy v. Masterson, supra.*

This case was an action pending in one of the courts of the Indian Territory at the time of the erection of the state, and hence the decisions of the Supreme Court of the United States in so far as they are applicable thereto are binding on this court in the determination thereof. *Sullivan v. Mercantile Town Mutual Ins. Co.,* 20 Okla. 460, 94 Pac. 676, 129 Am. St. Rep. 761; *State Mutual Ins. Co. v. Craig,* 27 Okla. 90, 111 Pac. 325; *Capital Fire Ins. Co. v. Carroll et al.,* 26 Okla. 286, 109 Pac. 535; *Freeman v. Eldridge,* 26 Okla. 601, 110 Pac. 1059; *Chicago, R. I. & P. Ry. Co. v. Newburn,* 27 Okla. 9, 110 Pac. 1065, 30 L. R. A. (N. S.) 432; *Phoenix Ins. Co. v. Ceaphus,* 29 Okla. 608, 119 Pac. 583. This being true and the proposition having been passed on by those courts, this fact in our judgment relieves us of a discussion of the rule as it may obtain in the different state courts of the nation even should it be found to be different.

It was first discussed by the Supreme Court of the United States in 1838 in the case of *Jenkins et al. v. Pye, supra.* That case was one where a gift was made by a child to a parent, and Mr. Justice Thompson, discussing the presumption involved, said:

"It is undoubtedly the duty of courts carefully to watch and examine the circumstances attending transactions of this kind when brought under review before them to discover if any undue influence has been exercised in obtaining the conveyance. But to consider a parent disqualified to take a voluntary deed from his child without consideration, on account of their relationship, is assuming a principle at war with all·filial as well as parental duty and affection, and acting on the presumption that a parent, instead of wishing to promote the interest and welfare, would be seeking to overreach and defraud his child; whereas, the presumption ought to be, in the absence of all proof tending to a contrary conclusion, that the advancement of the interest of the child was the object in view, and to presume the existence of circumstances conducing to that result. Such a presumption harmonizes with the moral obligation of a parent to provide for his child, and is founded upon the same benign principle that governs cases of purchases made by parents in the name of a child. The *prima facie* presumption is that it was intended as an advancement to the child, and so not falling within the principle of a resulting trust. The natural and reasonable presumption· in all transactions of this kind is that a benefit was intended the child, because in the discharge of a moral and parental duty. And the interest of the child is abundantly guarded and protected by keeping a watchful eye over the transaction to· see that no undue influence was brought to bear upon it."

The question was again before the court in 1898 in the case of *Towson et al. v. Moore, supra,* wherein certain heirs of a deceased ancestor sought to have set aside a gift from an aged woman to certain of her daughters. Speaking of the proposition and the situation presented in the case of *Jenkins et al. v. Pye, supra,* Mr. Justice Gray, who delivered the opinion of the court, said:

"In the case of a child's gift of its property to a parent, the circumstances attending the transaction should be vigilantly and carefully scrutinized by the court, in order to ascertain whether there has been undue influence in procuring it; but it cannot be deemed *prima facie* void. The presumption is in favor of its validity; and, in order to set it aside, the court must be satisfied that it was not the voluntary act of the donor."

This discussion, as will be noted, pertains particularly to a situation where the donor is a child and the donee a parent, but the opinion continues:

"The same rule as to the burden of proof applies with equal, if not greater, force to the case of a gift from a parent to a child, even if the effect of the gift is to confer upon a child with whom the parent makes his home, and is in peculiarly close relations, a larger share of the parent's estate than will be received by other children or grandchildren."

It is held in the syllabus that:

"The burden of proving undue influence in a gift from an aged woman to daughters with whom she lives alternately rests upon the plaintiff, who brings the action to set the gift aside. In case of a gift from a parent to a child, the circumstances should be vigilantly and carefully scrutinized to ascertain whether there has been undue influence in procuring it; but it cannot be deemed *prima facie* void, and, in order to set it aside, the court must be satisfied that it was not the voluntary act of the donor."

The question involved in these cases does not reach quite to the length demanded by the insistence of counsel in the case at bar. The claim is here made that, even though the burden of proof would rest upon plaintiff where merely the relation of parent and child existed and the gift or conveyance was sought to be annulled, in this case there is added thereto the additional fiduciary relations shown to have existed between this parent and her son. In 1889 this identical question was considered by the Supreme Court of the United States in the case of *Mackall et al. v. Mackall et al., supra,* an opinion written by the late Mr. Justice Brewer. This case was cited and quoted from in *Towson et al. v. Moore et al., supra.* In that case it was attempted to set aside a deed from a father to his son. It appeared from the facts that for twenty years the father and mother had been separated and this son had remained with the father, taking his part and assisting him in his affairs and looking after his business and caring for his father. The other children had gone with their mother, and had taken her part in the family differences. It was claimed therein that the execution of the deed was induced by the undue influence exercised on the father by the son. The part quoted from the opinion above referred to is as follows:

"In this respect, reference was made to the long intimacy between father and son, the alleged usurpation by the latter of absolute control over the life, habits, and property of the former,

efforts to prevent others during the last sickness of the father from seeing him, and the subjection of the will of the father to that of the son, manifest in times of health, naturally stronger in hours of sickness. A confidential relation between father and son is thus deduced which, resembling that between client and attorney, principal and agent, parishioner and priest, compels proof of valuable consideration and *bona fides* in order to sustain a deed from one to the other. But, while the relationships between the two suggest influence, do they prove undue influence? In giving a negative answer to that question, the court affirmed the following propositions: 'Influence gained by kindness and affection will not be regarded as undue if no imposition or fraud be practiced, even though it induce the testator to make an unequal and unjust disposition of his property in favor of those who have contributed to his comfort and ministered to his wants, if such disposition is voluntarily made. Confidential relations existing between the testator and beneficiary do not alone furnish any presumption of undue influence. * * * That the relations between this father and his several children during the score of years preceding his death naturally inclined him towards the one and against the others is evident, and to have been expected. It would have been strange if such a result had not followed; but such partiality towards the one, and influence resulting therefrom, are not only natural, but just and reasonable, and come far short of presenting the undue influence which the law denounces. Right or wrong, it is to be expected that a parent will favor the child who stands by him, and give to him, rather than the others, his property. To defeat a conveyance under those circumstances, something more than the natural influence springing from such relationship must be shown. Imposition, fraud, importunity, duress, or something of that nature must appear; otherwise that disposition of property which accords with the natural inclinations of the human heart must be sustained.' "

In the case of *Sawyer v. White,* from the Eighth Circuit of the United States Circuit Court of Appeals, *supra,* Judge Sanborn, speaking for the court, said:

"Nor is the fact that the grantee or devisee occupies a fiduciary relation to his grantor or testator necessarily fatal to the gift. It is the use of that relation to secure a deed or devise against the free will or desire of the grantor or donor, and not the mere existence of the relation, that vitiates a grant. It is true that when an unnatural or unreasonable gift or devise is made—such as one by a ward to his guardian, or·by a helpless invalid to his

nurse, or by a client to his trusted attorney—the presumption at once arises that the fiduciary relation was used to overcome the will of the grantor, and that the deed or devise is voidable. But, when the natural gift of a parent to a loved and trusted child is in question, this presumption is met and overcome by the still stronger presumption that such a gift is the natural and reasonable act of the parent, and that the free will of the donor inspired the grant, uninfluenced by the trust relation."

From these controlling authorities it will be seen that the presumption and burden of proof were properly declared by the trial court in its opinion.

There could be small, if any, value in setting out in detail all of the different charges and counter charges involved in this unhappy family controversy, for in our judgment, taking the entire record together and all that is established therein, there is nothing to show that the influence which Fred E. Turner had over his mother by reason of the relations existing between them was unduly or improperly exercised. The syllabus in the case of *Sawyer v. White, supra,* is as follows:

"The undue influence which will avoid a deed is an unlawful or fraudulent influence which controls the will of the grantor. The affection, confidence, and gratitude of a parent to a child, which inspires a deed or gift, is a natural and lawful influence, and will not render it voidable, unless this influence has been so used as to confuse the judgment and control the will of the donor."

We have not been able to find in this record evidence which would support a finding that the donee exercised either an unlawful or fraudulent influence over his mother, nor that it was so exercised to confuse her judgment or control her will. Two local trial courts passed upon the evidence of plaintiff and her son on the application for a receiver and each denied it, and a third local trial court after hearing all of the evidence in the case has not only come to the same conclusion, but has found against plaintiff in every element necessary for her to establish in order to succeed, and from the consideration which we have given the case we are unable to do otherwise than concur in the conclusion reached. The plaintiff is not shown to have been of unsound mind, nor was her mind so weakened by age or other infirmity as to render her will subservient to that of her son. Nor was

the transfer of the property to her son due to any importunity on his part. In the fullness of her affection and confidence she placed in his keeping and care the management of all of her property and estate, and, prompted by the same tender considerations, gave him that which is here involved, and, so far as we can see, he has neither justly forfeited her love nor abused the confidence reposed. After assuming control of her property and taking title to that which she gave him, he removed from Tulsa where he had been in business, and since then has devoted nearly, if not quite, all of his time and attention to the care, improvement, and conservation of the same. When received it was worth but a modicum of its present value, and carried with it but a small income, while now it is reputed to be one of the best income producing properties in one of the largest cities in our state. So that as we view the entire transaction, far from it being equitable to set aside this deed, it would be inequitable and wrong to do so.

The judgment of the trial court must therefore be affirmed.

TURNER, C. J., and HAYES and KANE, JJ., concur; WILLIAMS, J., concurs in the conclusion.