JOHN K. NOTLEY, ANNIE K. NOTLEY, VICTORIA MARIA KEALA VANNATTA, WILLIAM C. VANNATTA AND LILY NOTLEY HEEN *v.* CHARLES K. NOTLEY, ANNIE͡ NOTLEY, WILLIAM K. NOTLEY AND HANNAH NOTLEY.

## No. 1006.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

HON. C. W. ASHFORD, JUDGE.

ARGUED MARCH 19, 1917.                    DECIDED MAY 1, 1917.

ROBERTSON, C.J., QUARLES AND COKE, JJ.

FRAUD—*elements—intent.*

A promise, accompanied with an intention not to perform it, and made by the promisor for the purpose of deceiving the promisee and inducing him to act where he otherwise would not have done so, constitutes fraud.

CANCELATION OF INSTRUMENTS—*fraudulent representations.*

Where a parent secured from his children the conveyance to himself of valuable property upon the promise to form a corporation and to transfer the property thus obtained, together with other property owned by him, to the corporation and to prorate the stock in said corporation among those originally owning the property, when he in fact had no intention of fulfilling his promises but used them merely as a pretense to induce his children to execute the deed, equity will come to the relief of the defrauded parties and decree a cancelation of the deed thus obtained.

DEEDS—*undue influence—burden of proof.*

Where the grantors are of mature age and sound mentality the mere fact that they are the children of the grantee does not raise a *prima facie* presumption of the invalidity of the deed from the children to their father thereby casting the burden of showing the fairness of the transaction upon him.

PLEADING—*defective, aided by absence of demurrer and the intro-duction of evidence to support.*

A complaint which only inferentially avers a material fact, in the absence of a demurrer and where much evidence is given without objection to sustain the fact improperly pleaded, held, the defect was thereby cured.

### OPINION OF THE COURT BY COKE, J.

The complainants John K. Notley, Victoria Maria Keala Vannatta and Lily Notley Heen are the children of respondent Charles K. Notley and Emma Alice Notley, deceased, former wife of Charles K. Notley, and Annie K. Notley is the wife of complainant John K. Notley and William C. Vannatta is the husband of complainant Victoria Maria Keala Vannatta. Respondent Annie Notley is the second wife of Charles K. Notley, and respondent William K. Notley is a son, and the only other child of respondent Charles K. Notley and Emma Alice Notley deceased. The respondent Hannah Notley is the wife of William K. Notley. Emma Alice Notley died in Honolulu January 26, 1914, without having made a will. Her four children above named were her heirs at law and inherited all of her property in equal shares, subject to an estate by curtesy therein of her husband, the respondent Charles K. Notley. Her estate consisted of the family home on Kukui street, city of Honolulu, at which place she died, and of several other tracts of land situated in different parts of the islands, the largest and most valuable tract being lot No. 19, situated at Paauilo, island of Hawaii, containing an area of about 103 acres. All of said land is of the value of about $20,000. Lot 19, above referred to, is of the value of about $14,000. Nine days after the death of Emma Alice Notley, to wit, on the 5th day of February, 1914, at Honolulu, the complainants herein executed and delivered to respondent Charles K. Notley a deed conveying all of their interest in the afore-

said realty owned by the estate of Emma Alice Notley; that on or about the 14th day of May, 1915, this conveyance was signed and acknowledged before a notary public by the respondents William K. Notley and his wife Hannah. This deed was recorded in the office of the registrar of conveyances at Honolulu on the 12th day of July, 1915. On the 9th day of July, 1915, a deed was executed and acknowledged before a notary public by Charles K. Notley and his wife Annie Notley, whereby said lot 19 was conveyed outright to respondent William K. Notley, the consideration therefor, as expressed in said deed, being the sum of one dollar and love and affection.

This is a suit in equity brought for the purpose of obtaining the cancelation of said two deeds and placing all the parties interested in the estate of the said Emma Alice Notley in *statu quo ante*. The bill of complaint represents that respondent Charles K. Notley is a shrewd, scheming, grasping and ambitious man, and that the complainants John K. Notley, Victoria Maria Keala Vannatta and Lily Notley Heen have had little or no experience in matters of business, and up to the time of the alleged fraudulent transaction complained of had placed in the respondent Charles K. Notley implicit confidence and trust, yielding at all times to his parental authority, sagacity and superior judgment. It is further averred in the bill "that, for the purpose of wrongfully depriving your petitioners, John K. Notley, Victoria Maria Keala Vannatta and Lily Notley Heen, of all their right, title and interest in and to the said property so inherited from their mother, the said Emma Alice Notley, deceased, and intending to cheat and defraud your petitioners of all their said right, title and interest in and to the said property and to strip them of their said inheritance, the respondents, Charles K. Notley and William K. Notley, fraudulently combining, conspiring and

confederating together, and intending so to cheat and defraud your petitioners, did, on February 5, 1914, without any consideration therefor, fraudulently induce and prevail upon your petitioners to make, execute and deliver to the respondent, Charles K. Notley, that certain deed, recorded in the office of the registrar of conveyances aforesaid on the said 5th day of February, 1914, in Book 428, on pages 264, 265 and 266, a copy of which deed is hereunto annexed and marked 'Exhibit A', hereby referred to and made a part hereof, and which deed purports to convey the said property hereinabove described to the respondent, Charles K. Notley; that the said deed was so executed and delivered upon the express understanding and agreement that the respondent, Charles K. Notley, would immediately thereafter proceed and cause to be duly formed, organized and incorporated, under and by virtue of the laws of the Territory of Hawaii, a corporation, same to be known and designated as 'The Notley Estate, Limited;' that the articles of incorporation thereof were to be duly signed and acknowledged by the respondents, Charles K. Notley and William K. Notley, and your petitioners, John K. Notley, Victoria Maria Keala Vannatta and Lily Notley Heen, as the sole incorporators; and that upon the said corporation being so formed, organized and duly incorporated as aforesaid, it was also further understood and agreed by the five persons last above named as incorporators thereof, that the respondent, Charles K. Notley, would then forthwith duly convey all the said property above mentioned and described, together with all his real property, to the said corporation, the shares of stock in which corporation were to be divided and delivered, one-half thereof to the respondent Charles K. Notley, and the other one-half thereof to the respondent, William K. Notley, and your petitioners, John K. Notley, Victoria Maria Keala Vannatta and Lily Notley Heen, in consideration of their respective interests in said

property so conveyed and to be conveyed, and which understandings and agreements your petitioners believed to be true and they fully relied thereon in making, executing and delivering the said deed as aforesaid, and all of which understandings and agreements, particularly as to the formation of the said corporation by the respondent, Charles K. Notley, the respondents and each of them have wholly and absolutely failed, neglected and refused and still refuse to comply with and perform, and they and each of them also refuse to act, join or participate with your petitioners in any manner whatsoever in the preparation or signing of the articles or any article of incorporation or in the formation and organization of the contemplated corporation, although your petitioners have repeatedly requested them to so act, join and participate with them, and your petitioners have at all times been ready and willing and are now ready and willing to perform their and each of their parts in the execution of the articles of incorporation, as well as in the full and complete formation and organization of the said corporation; and the respondents have also absolutely refused to reconvey to your petitioners their respective interest in and to the said property although they have made demand upon the respondents so to do; that, as a part of the same fraudulent scheme and transaction, and with the same fraudulent intent and purpose to cheat and defraud as aforesaid, on the part of the respondents, that is to say, for the purpose of wrongfully depriving your petitioners, John K. Notley, Victoria Maria Keala Vannatta and Lily Notley Heen, of all their right, title and interest in and to the said property so inherited from their mother, the said Emma Alice Notley, deceased, and intending to cheat and defraud your petitioners of all their said right, title and interest in and to the said property, the respondents further fraudulently combining, conspiring and confederating together, and intending so to cheat and de-

fraud your petitioners, the respondents, Charles K. Notley and Annie Notley, they well knowing the premises, but intending to so cheat and defraud your petitioners and to aid the respondent, William K. Notley, in so cheating and defrauding your petitioners, did, on July 9, 1915, without any consideration therefor, make, execute and deliver to the respondent, William K. Notley, that certain deed, recorded in the office of the registrar of conveyances aforesaid, on the said 9th day of July 1915, in Book 428 on pages 271 and 272, a copy of which deed is hereunto annexed and marked 'Exhibit B,' hereby referred to and made a part hereof, and which deed purports to convey to the respondent William K. Notley the following described property (same being a portion of said property hereinabove described), to-wit:   All that certain piece or parcel of land contained and described in Land Patent (Grant) 5245 and known as Lot No. 19 Public Land Map No. 11, Second Land District and being situate at Paauilo aforesaid; said property so conveyed to and accepted by the respondent, William K. Notley (he well knowing the premises, but intending to cheat and defraud your petitioners), being of about the value of eight thousand dollars ($8,000.00) and far in excess of his share and interest in the property inherited from the said Emma Alice Notley, deceased."

The answer of the respondents joins issue upon the material allegations contained in the bill of complaint, admitting, however, the execution of the deeds referred to, the separate answer of Charles K. Notley and Annie Notley specifically representing that the complainants, of their own volition and free will and accord, without suggestion, inducement or representation whatsoever on the part of respondent Charles K. Notley, prepared or had prepared the deed of February 5, 1914, which deed was executed, acknowledged and delivered to said respondent, and that

respondent Charles K. Notley, moved by a generous spirit, conveyed said lot 19 to the respondent William K. Notley, the consideration therein expressed being the love and affection which he bore for his son William.

The case went to trial upon the issues thus formed and a vast amount of evidence was introduced both by the complainants and respondents. The circuit judge rendered a lengthy decision, finally holding that the complainants should prevail and that the deed of February 5, 1914, and also the deed of July 9, 1915, should be delivered up and be canceled and that the respondents reconvey all the property in question so as to place all parties in *statu quo ante.* A decree to that effect was thereafter made and entered. From the opinion and decree the respondents come to this court on appeal.

It is established by the evidence that the respondent Charles K. Notley is a man of about fifty-five years of age and that his four children, herein referred to, have all reached their majority and range from twenty-eight to thirty-four years of age. It appears that up to and for a time subsequent to February 5, 1914, a condition of tranquillity prevailed among them. It is shown that the father of the respondent Charles K. Notley, who died a number of years ago, left a large and valuable estate, but by the provisions of his will had disinherited his son Charles K. Notley; that the elder Notley had so provided in his will that his property should descend to his wife and to his children other than Charles K. Notley, and to the children of Charles K. Notley. It is further shown that Charles K. Notley's mother received from the estate of her husband about a quarter of a million dollars in cash, besides dower rights in real estate, upon the settlement of her husband's estate; that the respondent Charles K. Notley appears to have acquired such an influence and control over his mother that he secured the custody and disposition of the greater part,

if not all, of her large fortune in cash as well as the income from her realty interests. This fund was dissipated by the respondent Charles K. Notley with astonishing rapidity and completeness and a reckless disregard for the value of money. The fortune of the mother seems to have completely vanished at the time of the death of Emma Alice Notley, Charles K. Notley's wife, and the evidence very conclusively shows that while his wife was lying stricken with a fatal malady respondent Charles K. Notley persisted in his efforts to have her execute a will; that upon the day prior to her death he presented to her a will, already drawn, at the same time importuning her to sign it. There is no evidence of the contents of this will, but in the light of subsequent events its purport can well be imagined. Upon the death of Emma Alice Notley on January 26, 1914, the respondent Charles K. Notley seems to have lost no time in the furtherance of his scheme and intention to acquire the property of her estate. While returning from the cemetery on the occasion of his wife's funeral, in company with complainant John K. Notley and his wife, Charles K. Notley remarked that his wife had died without a will, and on the following morning at the breakfast table, in the presence of his children, he suggested that as Mrs. Notley had died intestate it would be beneficial to the children for them to deed the property inherited from their mother to him and that he would merge or join the same with certain property which he owned of about an equal value and form a corporation, he to take one-half of the capital stock and the other one-half to be prorated among the children. The complainants, having implicit faith and confidence in Charles K. Notley and relying upon his honest intentions and superior judgment, executed the deed on the 5th day of February, 1914. It appears that the deed was drawn by F. J. Testa and acknowledged before Samuel Upa, a notary public, both of whom were present at the execu-

tion of the deed by the complainants. An unfortunate co-
incidence is the fact that both of these parties died during
the period intervening between the execution of the deed
and the hearing of this case before the circuit judge. The
evidence, however, as it stands, shows conclusively that
both Testa and the respondent Charles K. Notley were
present when the deed was executed, and that the same
was signed by complainants under their joint direction;
that John K. Notley was called first by Testa, who said, "A
deed of mother's property," and requested him to sign,
adding, "And after that we'll form a corporation." John
asked, "After this is all over will he form a corporation?"
to which Testa replied, in the presence and hearing of
Charles K. Notley, "That's the sole purpose;" then John
replied, "With that understanding I will sign," and he did
so. The wife of John K. Notley was then called and the
same explanation was made to her, whereupon she asked
"Where are the other papers?" and Charles K. Notley re-
plied, "Oh, I'll fix that by and by." It appears that John
K. Notley's wife was reluctant to sign the deed but finally
did so and testified in this connection that she knew Charles
K. Notley to be a man of wide experience; that he was
always superior in the family and had his way in all family
affairs. The two daughters, Mrs. Vannatta and Mrs. Heen,
testified in effect to their having signed the deed because of
the implicit confidence which they had in their father and
upon his express promise that the corporation would be
formed by him. It appears that no attorney or outside
advice was taken by any of the children nor was it sug-
gested by any one that such advice should be obtained prior
to the execution of the deed. The evidence shows that a
short time after the 5th day of February, 1914, the deed
was delivered by the respondent Charles K. Notley to his
son, the respondent William K. Notley, to be taken by
him to his home on Maui and there to be executed by him-

self and his wife and returned to his father. Just what, if any, understanding there was between William and his father is obscure and left largely to inference and deduction. It is amply proven that William, although he denied it, was aware of his father's promise to form a corporation. William, after having retained possession of the deed about a month, was asked by his brother John why he did not sign it, and answered that he had his doubts, further explaining that he did not know that his father would keep his promise about the corporation, then at a later day, in the presence of his sister Mrs. Vannatta and her husband, when urged to sign the deed, he again expressed doubts regarding his father's intention to form a corporation. The fact that both Charles K. Notley and his son William are respondents in this case and both claim all of the property of the estate of Emma Alice Notley by virtue of the deed of February 5, 1914, whereas in the absence of said deed William would be entitled to only one-fourth thereof and his father to a mere curtesy interest therein, apparently causes them to withhold a full explanation of the transactions between them. Whether William in the first instance was in league with his father in the furtherance of a plan to strip his brother and sisters of their interest in their mother's estate is not clear. We think it more likely that he joined hands with his father for this purpose at a later day and only when it appeared to him that he could do so to his own great advantage. He was in possession of an unrecorded deed requiring the signature of himself and his wife to make the same completely effective. His father, the grantee, married the respondent Annie Notley in the month of September, 1914, and was financially embarrassed and was impatiently urging the execution and return of the deed by William and his wife so that he might accept an offer of two thousand dollars for one of the pieces of property included in the deed. It appears that Charles K.

Notley did not realize that the deed, unexecuted by William and his wife and unrecorded, conveyed to him anything more than an equitable interest in the property, or as he expressed it, constituted more than a cloud upon the children's title thereto. Thus it will be seen that William possessed the whip-handle of the situation. He serenely retained possession of the deed, sometimes expressing his intention not to execute it and at other times representing that he had destroyed it. After holding the deed some fifteen months we find him successfully negotiating with his father for a portion of the property, valued at fourteen thousand dollars, which he did thereupon acquire for the expressed consideration of one dollar and love and affection.

The complainants herein having waited for many months for their father to put into effect his agreement with them to form a corporation, and finally losing faith and confidence in his intention so to do, in October, 1914, transmitted to him a written notice that all tentative agreements, undertakings and documents theretofore entered into by them having for their object the organization of the C. K. Notley Estate, Limited, a corporation, were rescinded and no longer binding upon them. No response was made by Charles K. Notley to this communication and the next active step in the transaction was the execution of the deed of May 14, 1915, by William K. Notley and his wife. William testifies that on the day of the execution of this deed he had an attorney draw a deed from his father and wife to himself conveying lot No. 19 for the reason that he wanted to buy this lot from his father; that a few days thereafter he delivered the executed deed to his father but did not impart to his father the information that he desired to buy lot 19 for the reason that he had not the nerve to do so. He states, however, that having recovered his nerve, on the 9th day of July, 1915, he advised his father of his desire to purchase the lot and his father immediately re-

plied that he could have it. William had the drafted deed in his pocket and immediately accompanied his father and step-mother to a notary public and the deed was signed, acknowledged and delivered, the consideration expressed being one dollar and love and affection. William took possession of both of the deeds, transmitting the same to the office of the registrar of conveyances and caused them to be recorded, the one to his father being, by William's instructions, recorded a day ahead of the other, and thus the two respondents Charles K. Notley and William K. Notley became possessed of all the property of the estate of Emma Alice Notley, deceased.

The circuit judge seems to have decided this case upon the theory that the complainants should be afforded relief on account of the failure of consideration, and the further ground that undue or dominant parental influence was exercised by respondent Charles K. Notley over complainants at the time of the execution of the deed. The circuit judge found "that the deed of February 5 was executed by the parties plaintiff at a time when they were under the dominant parental influence of defendant Charles K. Notley and the law casts upon him the burden of showing the entire fairness of the transaction and this he failed to do." In so holding the circuit judge was clearly in error. See *Jenkins* v. *Pye,* 12 Pet. 241; *Sawyer* v. *White,* 122 Fed. 223; *Turner* v. *Turner,* 121 Pac. 616; *Towson* v. *Moore,* 173 U. S. 17. In the latter case Mr. Justice Gray, who delivered the opinion of the court, said: "In the case of a child's gift of its property to a parent the circumstances attending the transaction should be vigilantly and carefully scrutinized by the court, in order to ascertain whether there has been an undue influence in procuring it, but it cannot be deemed *prima facie void.*"

It is our opinion that where, as in this case, all the parties concerned are of mature age and of sound mentality, the

mere fact that the grantors are the children of the grantee does not raise a *prima facie* presumption of the invalidity of the deed thereby casting the burden of showing the fairness of the transaction upon the grantee. To defeat a conveyance from a child to its parent something more than the natural influence springing from such relationship must be shown; imposition, fraud, importunity; duress or something of that nature must appear; otherwise that disposition of property which accords with the natural inclination of the human heart must be sustained. *Mackall* v. *Mackall*, 135 U. S. 167. Undue influence was not averred, and in our opinion was not proven. The family relationship merely furnished the opportunity for the commission of the fraud. And the mere failure of consideration is not ordinarily a ground for the cancelation of a deed.

If the complainants are to recover at all they must do so upon the fact established by the evidence that the deed of February 5, 1914, was obtained from them by virtue of the false and fraudulent representations of respondent Charles K. Notley. It must appear that respondent Charles K. Notley, at the time he assured complainants of his intention to form a corporation, as alleged in the bill of complaint, had, in fact, no intention of so doing. This vital question seems to have been entirely overlooked by the trial judge. He made no findings respecting this phase of the case although there was ample evidence to justify him in doing so. It is true that the bill of complaint does not specifically allege that respondent Charles K. Notley had no intention of forming a corporation at the time he promised to do so and had respondents demurred to the complaint the question thus raised would likely have been disposed of favorably to them. But in the absence of a demurrer, and the fact that the complaint contains inferential averments of the fraudulent purpose of respondent Charles K. Notley, and in view of the further fact that much evi-

dence was admitted, without objection, tending to prove such fraudulent purpose, we are of the opinion that the defect in the pleadings was cured thereby. "An express averment of intent (to defraud) is not required, but it is sufficient if the existence of the intent can be clearly inferred from the allegations." 20 Cyc. 101. See also *County of Hawaii* v. *Purdy,* 22 Haw. 272.

The failure of the trial judge to make any findings upon the subject compels us to do so and we therefore find from the evidence that at the time respondent Charles K. Notley promised complainants herein that he would form a corporation for the purposes and under the circumstances alleged in the bill of complaint, that he did so with a premeditated design to cheat, defraud and deceive the complainants and that he had no intention at the time of performing or fulfilling the promises, but used them merely as a false pretense to induce the complainants to execute the deed. It was clearly proven that the respondent agreed to form a corporation and to convey to it the property in question. That promise was the real consideration and inducement for the conveyance. It appears that on two or three occasions he spoke in a casual way about forming a corporation but he took no step toward forming one, and in his answer and upon the witness stand he positively denied having made the promise. In the meantime he conveyed a portion of the property to his son William. "To profess an intent to do or not to do when the party intends the contrary is as clear a case of misrepresentation and of fraud as could be made." Bigelow on the Law of Fraud, 484.

"As a general rule, in order for false representations to be the basis of fraud, such representations must be relative to existing facts or facts which previously existed and cannot be founded upon promises as to future acts. There is, however, the exception to the foregoing rule, that if the promise is accompanied with an intention not to perform it and is made for the purpose of deceiving the promisee and

inducing him to act where otherwise he would not have done so, the same constitutes fraud." *Blackburn* v. *Morrison*, 29 Okl. 510. See also *Donaldson* v. *Farwell*, 93 U. S. 631, and *Chicago T. & M. C. Ry. Co.* v. *Titterington*, 84 Tex. 218.

Having found from the evidence before us that the deed from complainants to Charles K. Notley was secured through fraud and misrepresentation on the part of Charles K. Notley, as herein set out, it follows that equity will afford relief to the complainants.

What, if any, connection respondent William K. Notley had with the transaction at the outset is left to conjecture, but the evidence directly connects him at a later day with his father's scheme to defraud the complainants and discloses his participation in the fruits of a transaction which he knew was fraudulent.

"The remedy which equity gives to the defrauded person is most extensive. It reaches all those who were actually concerned in the fraud, all who directly and knowingly participated in its fruits, and all those who derive title from them voluntarily or with notice. 'A court of equity will wrest property fraudulently acquired, not only from the perpetrator of the fraud, but, to use Lord Cottenham's language, from his children and his children's children, or, as elsewhere said, from any persons amongst whom he may have parceled out the fruits of his fraud.' " 2 Pomeroy Eq. Jur., Sec. 918.

While the trial judge erred in his theory of the case the ultimate result of his conclusions was correct. "The decision of a circuit judge cannot be reversed because he gave wrong reasons, provided he came to a correct conclusion." *Calaca* v. *Caldeira*, 13 Haw. 214.

The decree appealed from is affirmed.

*J. T. DeBolt* for complainants.

*C. S. Davis* (*Frank Andrade* with him on the brief) for respondents.